CRANE et al. v. C. CRANE & CO.

(Circuit Court of Appeals, Seventh Circuit. January 21, 1901.)

No. 695.

**1. CONTRACTS—VALIDITY—MUTUALITY.**
    While one may bind himself by a contract to furnish another with such supplies as may be needed during a specified period of time for some certain business or manufacture, or with such commodities as the purchaser has already contracted to furnish to others, the quantity in such cases being capable of at least approximate estimation when the contract is made, an agreement by a wholesale dealer to supply a retailer during a certain time, at stated prices, with so much of a commodity as the purchaser may require for his trade, which leaves it practically optional with the purchaser to increase or diminish his orders with the rise or fall of prices, as may be most to his advantage and the corresponding disadvantage of the seller, is void for want of mutuality.

**2. SAME—BREACH—QUESTIONS FOR JURY.**
    In an action to recover a balance due for lumber sold and delivered, it appeared that plaintiff was a manufacturer of lumber, and defendants were dealers who had purchased from plaintiff continuously for a number of years; that there was no fixed time within which payment was required to be made, but that customarily settlement was made promptly after shipment, either in cash or paper due in 60 or 90 days. Defendants introduced evidence tending to show that plaintiff accepted an order on April 8th, for a certain kind of lumber, to be delivered within the next 30 or 60 days; that on June 3d, when a comparatively small proportion of such order had been delivered, plaintiffs refused to make further delivery until all shipments made during April and May had been paid for, about half of such shipments having been under such order; and that, the price having advanced, defendants refused to pay without assurance that the remainder of the order would be filled. *Held*, that such evidence raised questions of fact respecting the right claimed by defendants to recoup damages for breach of the contract made by the acceptance of such order, which should have been submitted to the jury, and that the direction of a verdict for plaintiffs was error.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The action in the Circuit Court was in assumpsit upon the common counts by the defendant in error against the plaintiffs in error, to recover the value of certain lumber sold and delivered by the latter to the former. The account annexed was for balances due upon merchandise sold on twenty-three different dates, running from the 22nd of February, 1898, to the 20th of May, 1898, inclusive, amounting in all to four thousand and fifty-seven dollars and twenty-three cents.

Against this the plaintiffs in error sought to recoup or set off the damages said to have been suffered by them, in the failure of the defendant in error to fill three certain orders relating to dock oak lumber of the dates of October 19th, 1897, January 31st, 1898 and April 8th, 1898; but at the conclusion of the evidence the court instructed the jury to disregard these claims, and return a verdict for the plaintiff for the full amount claimed. Error to this instruction is assigned.

It is insisted by the plaintiffs in error that in December, 1896, they made a contract with the defendant in error, resting wholly in parole, however, by the terms of which the latter was to furnish to the former all the dock oak that the former would require for their trade in the Chicago market during the year 1897, at certain prices not in dispute, and that this contract was broken in the failure to fill the order of October 19th, 1897. It is insisted, also, that in January, 1898, a like contract was made for the year 1898, except that the price was to be one dollar per thousand feet in excess of the prices for the preceding year, and that this contract was broken in the failure to fill the orders of January 1st, 1898, and April 8th, 1898 respectively.

The defendant in error had been for many years engaged in cutting, manufacturing, and selling lumber largely at wholesale with their principal place of business at Cincinnati; the plaintiffs in error had for nine years been engaged in Chicago in the business of buying and selling hard wood lumber, including dock oak. In supplying their customers in this trade the plaintiffs in error dealt largely with the defendant in error. It does not appear that the plaintiffs in error were manufacturers, or that the lumber purchased by them went into use or consumption by them, except as they resold it to their customers. They were exclusively lumber merchants, obtaining their supplies largely from the defendant in error, and reselling them to their own customers.

There was no evidence that the defendant in error accepted the orders of October 19th, 1897, or January 31st, 1898, or that, independently of the general contract relied upon, they agreed to fill them; nor was there evidence that the plaintiffs in error, in reliance upon the alleged general contract of January, 1898, had, previous to these orders, entered into any contracts that required the lumber ordered.

The order of April 8th was sent by mail. Respecting this defendant in error wrote: "We are doing all we can on all of your orders and are shipping you more lumber than to any one of our other customers. I have called the boys' attention to-night to the 24' and will hustle it all I can."

Omer F. Crane, one of the plaintiffs in error, testifies that a short time subsequently he took this order to the defendant in error, and had the following conversation with C. Crane, its president: "He" (C. Crane) "looked it over and said he would have to have more money for this lot of stuff. I told him we had made out contracts and we couldn't stand any more money than that. He said that he wouldn't fill it. So that was about all that was said that day. The next day I said 'What are you going to do about this thing? Are you going to fill it or not? If you are not going to fill it, I am going to Parkersburg and get it filled.' He said, 'I will tell you what I will do. I will take this order and fill it, but I won't fill any more at those prices.' So he got up with the letter and I says, 'Will you sign this acceptance,' and he said 'that is not necessary. I will have it entered on the book, and will have it filled.' And we walked over to Mr. Mowbray and said, 'Fred, put this order on the book and see it is filled, and don't fill any more at those prices without first consulting me.'" This testimony is uncontradicted.

The order of April 8th was to have been filled within the next thirty and sixty days. It was but partially filled. In the meantime prices rose, and the defendant in error failed to complete the order.

In the general lumber dealings between the plaintiffs in error and defendant in error there was no particular agreement respecting the time of payment. Sometimes the lumber was paid for promptly, and sometimes by the giving of sixty or ninety days paper. On this general account the plaintiffs in error were in arrears, both for the months of April and May, amounting June 2nd, according to their own letter, to the sum of thirty-eight hundred dollars, about twenty-one hundred of which was for lumber shipped under the order of

April 8th. Respecting this arrearage the defendant in error wrote, May 31st, 1898, as follows: "I want you to send us what is due us for April at once; also the May account as soon as you get it checked up. It is just our time for laying in timber and we are using all the money we can get hold of, and we are not in shape to give long credit to anybody." Replying to this, June 2nd, 1898, the plaintiffs in error wrote: "We owe you about $3800.00 which amount we will hold until you make a showing that you are going to furnish the oak. We don't blame the firms for kicking; (the firms with whom it is claimed plaintiffs in error had contracted to furnish dock oak) they have the docks torn up, have 2 or 3 tugs and pile driver laying idle waiting for Oak. The different firms owe us about $6000.00; they say they would not pay us one cent of money until we fill their orders. The $3800. that we hold of yours will be a very small per cent. of the amount it will cost you if you don't go ahead and fill the order." To this, defendant in error, June 3rd, 1898, replied as follows: "We will not load another board of lumber until we get paid for what we have already sent you. Now, here are bills that are 60 days past due, as this lumber was all to be paid for within ten days after date of invoice less 2%. We do not care about giving credit any further than we have, and we will not send any more lumber until this is paid for."

The further facts are stated in the opinion.

Walter Olds, for plaintiff in error.

J. K. Boyesen, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The question lying at the threshold of this case is whether the so-called contract of December, 1896, relating to the sale of dock oak lumber for the year 1897, and the so-called contract of January, 1898, relating to the same subject for the year 1898, are enforceable.

The contention is that, being in parole, the first is obnoxious to the Statute of Frauds, and both are void for want of mutuality.

It is within legal competency for one to bind himself to furnish another with such supplies as may be needed during some certain period for some certain business or manufacture; or with such commodities as the purchaser has already bound himself to furnish another. Reasonable prevision in business requires that such contracts, though more or less indefinite, should be upheld. Thus a foundry may purchase all the coal needed for the season; or a furnace company its requirements in the way of iron; or a hotel its necessary supply of ice. Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774; National Furnace Co. v. Keystone Mfg. Co., 110 Ill. 427; Railway Co. v. Witham, L. R. 9 C. P. 16; Smith v. Morse, 20 La. Ann. 220. So, too, a dealer in coal in any given locality may contract for such coal as he may need to fulfil his existing contracts, regardless of whether delivery by him to his customers is to be immediate or in the future. Shipman v. Mining Co., 158 U. S. 356, 15 Sup. Ct. 886, 39 L. Ed. 1051. In all these cases, contracts looking towards the future, and embodying subject-matter necessarily indefinite in quantity, have been upheld; but it will be observed that, although the quantity under contract is not measured by any certain standard, it is capable of an approximately accurate forecast. The capacity of the furnace, the needs of the railroad,

or the requirements of the hotel are, within certain limits, ascertainable by the vendor. He is thus enabled to make reasonably accurate calculation of the extent of his obligation. Then, too, the purchase is only an incident of the vendee's business. Presumably the business will go on irrespective of a rise or fall in the prices of subsidiary supplies. There thus remains to the vendee little or no temptation, on account of the rise or fall in prices, to greatly enlarge or diminish the quantity of his orders.

The contracts brought to our attention have no such standard of approximate certainty, and no such safeguard against opportunity to impose upon the vendor. Plaintiffs in error were at the time engaged in no manufacture or business that required dock oak lumber as an incidental supply, nor were they under any contract to deliver such lumber to third persons at fixed prices. They were lumber merchants pure and simple—middlemen between the defendant in error, and such customers as usually come to a merchant. Should the contract under discussion be upheld, the plaintiffs in error would be held to occupy this advantageous situation: If the prices of dock oak lumber rose, they would, by that much, increase their ratio of profits, and probably, coming into a situation to outbid competitors, increase, also, the quantum of orders; if, on the other hand, prices fell below the range of profits, the orders could be wholly discontinued.

On the contrary, the situation of the defendant in error would be this: Should prices fall, it could not compel the plaintiffs in error to give further orders; but, should prices rise, the orders sent in would be compulsory, and the loss measured, both by the increase of the ratio of profits, and the probable increase of the quantum of orders. It is needless to say that such a contract is unilateral, and void for want of mutuality. It, in effect, binds the defendant in error alone, for it leaves the plaintiffs in error—whose whole interest is embodied in the prices obtainable—in a situation to either go on, or to discontinue, as such interest developes.

This disposes of every specification of error relating to set-off or recoupment, except such as relate to the order of April 8th, 1898. The consideration of this order involves a state of facts, and an application of the law, wholly apart from the general contracts just discussed.

There was testimony, sufficient to go to the jury, tending to show that this order was accepted by the defendant in error, and was, from the date of such acceptance, independently of any general contract, a binding obligation between the parties; that upon that date, and for years previously, the parties had had mutual dealings in the general lumber trade, including dock oak lumber; that, on account of these dealings, a mutual debit and credit account was kept; that there was no distinct understanding respecting the length of credit to be given upon the respective orders, but that, customarily, shipments of lumber were paid for, either in cash promptly, or by sixty or ninety day paper; and that on the first of June there was due to the defendant in error upon these dealings, on account of deliveries in April and May, the sum of about thirty-eight hundred dollars,

twenty-one hundred of which was for lumber delivered under the order of April 8th.

There was, also, testimony, sufficient to go to the jury, tending to show that the lumber embraced in the order of April 8th was to be delivered in thirty and sixty days; that a portion was delivered, but much the larger portion remained undelivered; that the plaintiffs in error, from time to time, until the third of June, urged more speedy deliveries; that the defendant in error, in substance, responded that it was doing all it could, to fill the order; that in this state of the transaction the defendant in error, near the end of May, began urging the payment of the arrearages; that plaintiffs in error confessed the arrearage, but countercharged the defendant in error with its failures to deliver; and that finally, but not until the third of June, five days before the defendant in error's time to fill the order would have expired, it was, for the first time, distinctly stated by the defendant in error that there would be no further compliance with the contract until the arrearages were paid. It is fairly questionable if, at this later date, the arrearages had been paid, the defendant in error could, within the time stipulated, have fulfilled its contract by the delivery of the remaining lumber.

The contract created by the acceptance of the order of April 8th was an entirety. The failure of the plaintiffs in error to pay, within the customary period, the price of each delivery did not avoid the contract until the defendant in error, by some action, distinctly and reasonably asserted, attempted a rescission. Default in respect to one several part of a contract will not entitle a party to disregard the whole as a nullity, unless there has been a renunciation of the entire contract. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366.

In some states the rule has been held that where an entire contract is made for the sale and delivery of personal property, either for a gross sum, or at a certain price per unit of its measure or weight, and it is only in part performed by the vendor, no action can be maintained on the contract for such part performance; in other states the rule is held that if the vendee retains the part delivered after the vendor has made default in respect to the residue, it is severance of the contract, and the vendor is entitled to recover the contract price for what is so delivered and retained, subject to recoupment of such damages as the vendee sustains for nonperformance of the entire contract. Suth. Dam. § 645.

Applying either of these rules to the case under discussion, it is clear that if the defendant in error had postponed until the eighth of June—the expiration of the sixty days—its announcement that the contract would not be further complied with, there could have been upon its part, either no recovery at all of the twenty-one hundred dollars due for deliveries already made under the order of April 8th; or only such recovery as remained after recouping against it such damages as the plaintiffs in error suffered by reason of the non-deliveries. Does the fact that the distinct attempt at rescission came five days before the expiration of the sixty days change the rights of the parties?

The answer to this question, we think, depends upon some questions of fact that ought to have been submitted to the jury. The evidence discloses that the deliveries actually made by the defendant in error were proportionately small, throughout the fifty-five days that the contract ran unrescinded, in comparison with the whole quantity of lumber ordered. It might have been shown that deliveries, in respect of time, were expected to take place at the option of either the vendee or the vendor, but no such testimony was submitted. In its absence, the law so construes the contract, that deliveries should run ratably through the whole sixty days allowed. In such case the act of rescission came after the great bulk of deliveries ought to have been made, and could not, therefore, affect the vendor's liability for its previous failure to deliver according to the contract.

It might be, also, that the act of rescission, coming so shortly before the expiration of the time within which deliveries could be made, evinces such a state of facts, that the jury could reasonably presume that it was not interposed in good faith on account of the arrearages in the payment, but was thrown out rather as a pretext to cover the vendor's sense of its own default. However we look at it, there should have been a submission of the questions of fact arising upon the order of April 8th, to the jury, under appropriate instructions, and for the error of the Circuit Court, in this respect, the judgment must be reversed, with directions to grant a new trial.

WOODS, Circuit Judge, concurs in the result.