A. SANTAELLA & CO. v. OTTO F. LANGE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. June 17, 1907. On Rehearing, September 3, 1907.)

No. 2,364.

1. CONTRACTS—CONSIDERATION—MUTUALITY.

There is want of mutuality, necessary for a valid contract, where plaintiff, the manufacturer of a certain cigar, offered to sell in the future to defendant, a cigar dealer, as many of such brand as he might desire for his wants, and to continue to do so during the life of the brand, as long as defendant cared to sell them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 344.

Mutuality in, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.]

2. APPEAL—RECORD—QUESTIONS RAISED.

The question of want of mutuality in the contract on which a counterclaim is predicated is properly raised by the record; plaintiff having at the close of the evidence moved for an instructed verdict on the ground that defendant showed a failure of consideration on the part of plaintiff for the contract, and the overruling of the motion having been assigned as error, and such assignment insisted on in the brief.

3. SAME—REVIEW—RULES OF COURT.

The provision of Circuit Court of Appeals rule No. 11, that the court, at its option, may notice plain errors not assigned, reserves to the court, in the interest of justice, the right, resting in public duty, to take cognizance of palpable errors on the face of the record and proceedings, especially such as clearly demonstrate that the suitor has no cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 2968–2982.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

George W. Kiesel and D. J. Lenehan (L. G. Hurd, on the brief), for plaintiff in error.

Nathan E. Utt (Alphons Matthews and John P. Frantzen, on the brief), for defendants in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff in error (hereinafter designated the plaintiff), an Illinois corporation, with its principal place of business in Chicago, sued the defendants in error (hereinafter designated the defendants), a copartnership, doing business at Dubuque, in two counts. The first count is predicated of a promissory note, executed by the defendants to the plaintiff February 23, 1903, for $1,200, due in three months thereafter. The second count is based upon an open account for cigars sold by plaintiff to the defendants between the 6th day of March and the 5th day of May, 1903, amounting to $4,415. The answer, in effect, admitted the debts as alleged, and then set up a counterclaim for damages in the sum of $30,000, resulting from an alleged breach of contract in the failure and refusal of the plaintiff to ship to the defendants cigars as required. On

trial to a jury, at the close of the evidence, the plaintiff moved for a directed verdict, which was refused. The jury returned a verdict for the defendants in the sum of $3,262.25, which, including the admitted sums owing to the plaintiff, amounted to $9,087.75.

As counsel for the plaintiff insisted in argument here only upon the error assigned in the refusal of the court to direct a verdict, it is made necessary to disclose the case made on behalf of the defendants. The alleged contract was not in writing, and its character is to be found in the allegations of the counterclaim and the testimony of Otto F. Lange, representing the defendants in making the alleged contract. The answer, after some preliminary statements by way of inducement leading up to the contract, disclosed that the plaintiff was engaged in the manufacture and sale of a cigar known as the "Optimo" brand, which it was anxious to exploit in certain territory in Iowa and vicinity, and wished the defendants, as experi-- enced dealers in cigars, to undertake this exploitation in the interest of both concerns. The answer states that the same was "to be furnished at the times and in the quantities, sizes, shapes, and qualities as might be thereafter ordered by the defendants, all of the said cigars to be sold and furnished subject to a discount of two per cent. if settled for thirty days from the date of shipment or invoice, such settlement to be made by cash or notes of the said defendants, bearing five per cent. interest and running thirty, sixty or ninety days at the option of the said defendants, and would continue to manufacture, and supply exclusively such 'Optimo' cigars to said defendants, at such prices, on such terms, and in such sizes, shapes, and quantities as ordered by the defendants, in the territory named, and such other territory as might thereafter be given to them, so long as the trade therein would continue." It is further averred that the plaintiff failed and neglected to furnish, as ordered, said Optimo cigars in the sizes, qualities, shapes, and quantities as demanded and as was necessary for the trade in said territory.

The testimony of said Otto F. Lange was to the effect that by request of one Glaspell, traveling salesman representing the plaintiff, they met in Dubuque, Iowa, about the 13th of August, 1900; that Glaspell wanted the defendants to buy from the plaintiff said brand of cigars known as the "Optimo," which he thought the defendants could build up a trade and create a large market therefor. His version of the agreement was as follows:

"The terms were 60 days net, without discount, or 2 per cent. discount if paid in 10 days, but that he would give me 30 days frôm date of bill in which to take the 2 per cent. discount if I wanted to take it. He said that the goods were made in Tampa, Fla., but that they were shipped from Chicago. If our business grew so that they shipped in case lots from Tampa, that the date of the bill should be the date of the arrival of the goods."

This was followed by some other details as to the mode of settlement. Further on he testified:

"I said to Glaspell I would accept the contract. * * * Glaspell said they would stop others from selling the cigars in the territory given me. He would sell me as many as I desired for my wants, and continue during the life of the brand, as long as I cared to sell them. * * * My orders were to be filled the same day they were received, if they had the goods."

While there are some variances between the versions of the contract in the testimony between said Lange and Glaspell, for the purposes of this case, it is not necessary to rest it upon other testimony than that of Lange.

Orders thereafter were sent in by defendants for cigars as needed in their business, and were generally satisfactorily complied with by the plaintiff. Some complaint in January, 1902, and perhaps later, on the part of the defendants was made that some orders had not been promptly filled; but after explanation by plaintiff the business relations were continued. Shipments of cigars were only made as and when ordered by the defendants. In December, 1902, and the forepart of 1903 the orders were sent in most frequently. On the 7th day of May, 1903, the defendants telegraphed to the plaintiff to "Cancel all our orders." The plaintiff immediately answered by letter as follows:

"Your telegram of to-day is at hand, and in compliance with same we have wired our factory to cancel all of your orders."

And in a postscript said that it (the plaintiff) had received check for $1,000, which was placed as a credit on the note of $2,000, due May 2, 1903, and requested the defendants to send check for the balance not later than. Monday. The defendants followed up said telegram of May 7th with a letter giving in explanation of the direction to cancel all orders that "we have lost track of what we have ordered." In the letter they requested shipment of certain specific cigars. This letter evidently having been received on the 9th of May, 1903, the plaintiff wrote the defendants that it was very much surprised at the telegram of the 7th of May, "as you canceled all your orders and we wired our factory to that effect." In this letter the plaintiff inclosed the defendants a statement of account, stating that they owed the plaintiff bills amounting to about $3,500, reminding the defendants of the necessity in its business of having prompt payments made, alleging that in the past they had been quite lenient, that "we find that you seem to take your own time and do your business with us all your own way, leaving us nothing but to ship you goods as fast as you want them, and you pay for them when you get good and ready, and make deductions when you feel like it." Thereafter considerable correspondence took place between the parties respecting the payment of past accounts and notes, resulting in the refusal of the plaintiff to fill any more orders from the defendants until the past arrears were paid, and under a new arrangement. As much of this correspondence ensued after the controversy arose, it contains much of self-serving statements, which are not important to a proper decision of the case.

The controlling question for determination is: Did the defendants have an enforceable contract with the plaintiff? It must be conceded that, if the defendants had such a contract, it was essential to its validity that it should have been mutually obligatory upon both parties. If the defendants could compel the plaintiff to ship cigars, the plaintiff ought to be in a position to compel the defendants to take. Were the defendants under any obligation to send in orders within any particular time, or for any specified quantity or quality

of cigars? The allegations of the counterclaim and the version given of the agreement in the testimony of Otto F. Lange answer these questions. It was entirely at the option of the defendants, dependent upon the conditions of their business and trade, as to whether they would send in any orders at all. From any cause, such as depression in business, or other more desirable arrangements, or a desire to get out of that line of trade, the defendants were at liberty to cease at any time to send orders to the plaintiff, without liability for breach of contract. As shown by the entire dealing between the parties, both unquestionably understood that the plaintiff could only ship cigars as and when ordered by the defendants. So, notwithstanding that prior to the 7th day of May, 1903, the defendants had sent in a large number of orders, which had not then been met by shipments, and although the plaintiff had placed them with the factory at Tampa, both parties acted upon the understanding of the contract, that the plaintiff could not ship save as and when the defendants might direct. It would be a work of supererogation to review the authorities touching the law applicable to such situation, as Judge Sanborn, speaking for this court, in Cold Blast Transp. Co. v. Kansas City Bolt & Nut Company, 114 Fed. 77, 52 C. C. A. 25, 29, 57 L. R. A. 696, laid down the following postulates as expressing the correct rule of law:

"The rules applicable to contracts of this class may be thus briefly stated: A contract for the future delivery of personal property is void, for want of consideration and mutuality, if the quantity to be delivered is conditioned by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty. An accepted offer to furnish or deliver such articles of personal property as shall be needed, required, or consumed by the established business of the acceptor during a limited time is binding, and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer. Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Minnesota Lumber Co. v. Whitebreast Coal Co., 43 N. E. 774, 160 Ill. 85, 31 L. R. A. 529; Parker v. Pettit, 43 N. J. Law, 512. But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire, or take any of the articles mentioned. Bailey v. Austrian, 19 Minn. 535 (Gil. 465); Tarbox v. Gotzian, 20 Minn. 139 (Gil. 122); Railway Co. v. Bagley, 60 Kan. 424, 433, 56 Pac. 759; Oil Co. v. Kirk, 15 C. C. A. 540, 68 Fed. 791; Crane v. C. Crane & Co., 45 C. C. A. 96, 105 Fed. 869. Accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase, or the other refuses to sell or deliver, under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder. Crane v. C. Crane & Co., 45 C. C. A. 96, 105 Fed. 869; Oil Co. v. Kirk, 15 C. C. A. 540, 68 Fed. 791; Campbell v. Lambert, 36 La. Ann. 35, 51 Am. Rep. 1; Railway Co. v. Mitchell, 38 Tex. 85, 95; Ashcroft v. Butterworth, 136 Mass. 511, 514; Drake v. Vorse, 52 Iowa, 417, 3 N. W. 465; Thayer v. Burchard, 99 Mass. 508, 520; Hoffman v. Maffioli, 80 N. W. 1032, 1035, 104 Wis. 630, 47 L. R. A. 427; Railroad Co. v. Jones, 53 Ill. App. 431, 437; Rafolovitz v. Tobacco Co. (Sup.) 25 N. Y. Supp. 1036, 73 Hun, 87."

The case at bar does not come within the rule in respect of a contract obligating the vendor to furnish all the goods required by

the vendee in an established business during a limited time, as in the case of a merchant who contracts with a manufacturer to furnish all the goods of a particular quality the acceptor requires, with the implication that he binds himself to take during a specified period all the articles required for the given business; or as in the case of a contractor who has accepted a proposition from a manufacturer or vendor to furnish all the material required in the construction of a particular work. But this case comes clearly within the rule that an accepted offer to sell or deliver, or to buy at specified prices, during a limited time, in such quantities as the buyer may need or desire in his business, without any specification as to the quantity or amount, is without consideration, for the palpable reason that the buyer placed himself under no obligation to need or desire any quantity at any given time or during any given period. The defendants were at liberty to send in orders ad libitum, or not to send in any orders at all. The one was completely left at the will or caprice of the other. The plaintiff could at no time manufacture any quantity or quality of cigars depending upon a contract requiring the defendants within a given period to take them, as it was wholly at the pleasure of defendants in sending in any orders.

The case of Bailey et al. v. Austrian, 19 Minn. 535 (Gil. 465), appositely presents the law of this case. The facts sought to be established there were that on a given date the plaintiffs, being engaged in a general foundry business at St. Paul, the defendant promised to supply them with all the Lake Superior pig iron wanted by them in their said business until December thereafter, at specified prices, and the defendant claimed that the plaintiffs promised to purchase of defendant all of said iron which they might want in their business during the time above mentioned. After stating the general rule laid down in 1 Parsons on Contracts, 449, and note Z, the court said:

"Upon the foregoing state of facts, the engagement of plaintiffs was to purchase all of said pig iron which they might want in their said business during the time specified; but they do not engage to want any quantity whatever. They do not even engage to continue their business. If they see fit to discontinue it on the very day on which the supposed agreement is entered into, they are at entire liberty to do so at their own option, and, whatever might have been defendant's expectation, he is without remedy. In other words, there is no absolute engagement on plaintiffs' part to 'want,' and, of course, no absolute engagement to purchase any iron of defendant. Without such absolute engagement on plaintiffs' part, there is no absolute mutuality of engagement, so that defendant has the right at once to hold plaintiffs to a positive agreement."

The contract described by the defendants is not enforceable against the plaintiff, as it is wanting in the essential of mutuality. The request by plaintiff for an instructed verdict should have been given.

It is finally urged, however, against an instructed verdict that it was properly refused because it appears from the counterclaim that the plaintiff owed the defendants some $22.10 for advertising, expressage, and a cigar sign. There was no issue made by the plaintiff at the trial concerning these small items; and in entering judgment for the plaintiff on the note and account it would be but a matter of computation of the amount due thereon after deducting the undis-

puted item of $22.10, which the court should have directed as a mere clerical act, and entered judgment for the plaintiff for the balance due on the note and account.

It results that the judgment of the circuit court must be reversed, and the cause remanded, with directions to proceed in conformity with this opinion.

### On Petition for Rehearing.

The petition for rehearing assumes that the opinion of the court, holding that the contract on which the counterclaim is predicated is not enforceable for want of mutuality, should be withdrawn for the reason that such question does not properly arise on the record, and was not, therefore, argued by counsel for the defendant in error. This criticism is not well founded, either in fact or law. At the close of all the evidence the plaintiff in error moved the court for an instructed verdict in its favor. Among the grounds stated in support of the motion is the following:

"Because the plaintiff [i. e., the proponent of the counterclaim] has affirmatively shown a failure of consideration on the part of the defendant for the contract sued upon."

"Plaintiff in error assigns as error the action of the court in overruling the motion made by plaintiff in error at close of all the evidence in the case that the jury be instructed to find a verdict in its favor."

In the closing paragraph of the brief of the plaintiff in error it is urged that:

"In our judgment the whole case was determinable upon the motion to direct the verdict. Because that motion was overruled and the court by its instructions determined as a matter of law in its interpretation of the contract that defendant in error might recover damages on its counterclaim, we confidently believe the question involved in this case should finally be determined in this court, and the judgment of the court below reversed."

The lack of mutuality in the reciprocal obligations of the alleged contractors negatives the existence of a valid consideration for the promise of one of the parties. Forsooth counsel for the plaintiff in error may have laid especial stress in his argument upon some proposition of law which he conceived to be important and controlling did not warrant the court in disregarding other errors reasonably within the terms of an exception or an assignment of errors.

That counsel does not fully recognize and urge a principle of law in argument which is embraced within the pleadings or presented in the record cannot preclude the court from giving due consideration and application to a rule of law which is determinative of the controversy. Indeed, an appellate court would fail to heed the wholesome maxim, "Interest reipublicæ ut sit finis litium," should it fail to take notice, when reasonably presented, of a settled principle of law the application of which ends the litigation. Rule 11 of this court (150 Fed. xxvii), respecting the assignment of errors, declares that "the court, at its option, may notice plain errors not assigned." This proviso was and is intended, in the interest of justice, to reserve to the appellate court the right, resting in public duty, to take cognizance of palpable error on the face of the record and proceedings, especially such as clearly demonstrate that the suitor has no cause of action. "Where parties

have produced all their evidence, and the court has received it, and they have rested their case at the trial, they have thereby admitted, and in that way estopped themselves from denying, that they can do no more to overcome the objection that the evidence is insufficient to sustain a verdict in their favor, because the question of the sufficiency of the evidence always arises before the submission to the jury, and it is the province and duty of the court to determine it." Bank of Havelock v. Western Union Telegraph Co., 141 Fed. 522-527, 72 C. C. A. 580, 4 L. R. A. (N. S.) 181.

In support of the motion for rehearing counsel have extensively gone into a review of the case in the attempt to show that the opinion of the court improperly held that the contract in question was unilateral, placing much stress upon the contention that the testimony of Mr. Lange tended to show that a part of his undertaking under the arrangement between the parties was that he should, by his experience and labor, extend the field for the sale of the cigars to be furnished by the plaintiff in error, thereby creating a larger market for them, and that he performed in this respect his undertaking. Let it be so conceded. But how does this obviate the stubborn fact that whether or not he would maintain that field and demand, occupy or abandon it, or cease, ad libitum, to send in any orders, or betake himself to some other field of operation and employment, were wholly optional on the part of the defendant in error? The plaintiff in error, on such election by its purchaser, was without remedy. It could not compel the proposed purchaser to want any cigars. It could not ship a box of cigars, except as ordered by the purchaser. As shown in the opinion, both parties so recognized the situation and acted upon it when the defendant in error directed that the orders already in be not filled. That such a contract is one-sided, wanting in that mutuality essential to its enforcement, is settled in this jurisdiction.

The petition for rehearing is denied.