## T. B. WALKER MFG. CO. v. SWIFT & CO.

(Circuit Court of Appeals, Fifth Circuit. October 7, 1912.
Rehearing Denied November 22, 1912.)

### No. 2,287.

1. CONTRACTS (§ 10*)—MUTUALITY OF OBLIGATION.

Where a seller agrees to deliver such quantities of any commodity as the buyer may choose to order. but the buyer does not agree to order any quantity thereof, the contract is void for want of mutuality.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21-40; Dec. Dig. § 10.*]

2. CONTRACTS (§ 10*)—MUTUALITY.

Where a buyer has an established business, the contract by which the seller agrees to furnish the buyer with such supplies as may be needed by the buyer during a specified period is not objectionable for want of mutuality; both parties being bound, the seller to furnish and the buyer to receive what is needed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21-40; Dec. Dig. § 10.*

Mutuality in contract, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.]

3. SALES (§ 60*)—CONSTRUCTION—SURROUNDING CIRCUMSTANCES.

Where a seller agreed to furnish a buyer, and the buyer agreed to take, between 175,000 and 225,000 pounds of beef trimmings for use in his business, and the contract also obligated the seller to take care of the buyer's needs during the current year, the court, in construing the contract, was not limited to the language employed, but was entitled to look to the subject-matter, the course of dealing between the parties, and all the relevant surrounding circumstances.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 160; Dec. Dig. § 60.*]

4. SALES (§ 71*)—CONTRACT—CONSTRUCTION—"BUYER'S NEEDS THIS YEAR."

Plaintiff owned and operated a cannery for the manufacture of canned goods in which beef was used, having previously for four or five years purchased beef from defendant, a packer. It had not been plaintiff's custom to run its factory at full capacity, which was about 10,000 pounds a day, without regard to orders received, but rather to manufacture goods to fill orders received or sales made, and to keep on hand a sufficient supply to fill orders that would probably be received. Under these circumstances plaintiff agreed to purchase, and defendant agreed to sell to plaintiff, 175,000 to 225,000 pounds of beef trimmings, to be delivered at the seller's option during the year: defendant agreeing to "take care of the buyer's needs this year." *Held.* that the clause quoted did not obligate defendant to furnish a sufficient quantity to operate plaintiff's plant at full capacity for the year, but only obligated it to furnish a sufficient quantity to operate the factory in accordance with plaintiff's customary operation, and to cover the amount that plaintiff's sales might exceed the maximum quantity as named in the contract, etc.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 189-196; Dec. Dig. § 71.*]

In Error to the Circuit Court of the United States for the Western District of Texas; Thomas S. Maxey, Judge.

Action by the T. B. Walker Manufacturing Company against Swift & Co. Judgment for defendant, and plaintiff brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

T. W. Gregory, of Austin, Tex. (Hart & Patterson and Gregory, Batts & Brooks, all of Austin, Tex., on the brief), for plaintiff in error.

James H. Robertson, of Austin, Tex. (J. B. Robertson, of Austin, Tex., on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. In 1909 the parties to this suit, who, for purposes of jurisdiction, are citizens of different states, made the following contract of sale:

"This agreement witnesseth: That Swift & Company, Austin, Texas, agree to sell and deliver, and T. B. Walker Manufacturing Company, Austin, Texas, agree to buy and receive, 175,000 pounds to 225,000 pounds beef trimmings, fresh or frozen, seller's option. If fresh, packed in barrels; if frozen, packed in 100-pound boxes. We take care of buyer's needs this year.

"Delivery—By seller's team at buyer's place of business as wanted by the buyer during the year 1909, in about equal quantities monthly.

"Payment—As may from time to time be designated by seller's credit department.

"Price—3½¢ per pound, C. A. F., Austin.

"This agreement subject to:

"1. Fires, strikes, floods and to confirmation by Swift & Company, Chicago, Illinois.

"2. In case buyer defaults in payment, become subject to bankruptcy laws, or credit impaired, seller may refuse further deliveries, except against each.

"Confirmed in Chicago, Illinois,......1909.

"Swift & Company,
"By W. W. Farmer, Cashier.

"T. B. Walker Manufacturing Co.
"By Del Walker, Buyer,
"JnP & May."

The clause, "We take care of buyer's needs this year," was added to the contract at the request of the buyer, to increase the maximum quantity it was entitled to order.

The action is brought by the buyer, alleging that the seller failed and refused to deliver the commodity sold in quantities as required by the contract. The rulings of the trial court to which exceptions are reserved involve two questions: (a) Whether or not the addition to the contract is valid; and (b) if valid, what is the proper construction and meaning of the added clause?

[1] 1. When there are negotiations in reference to a sale, they must be such as will bind both parties, or neither will be bound. Unless both are so bound that either could maintain an action against the other for a breach, neither will be bound. It follows that, if a seller agrees to deliver such quantities of any commodity as a buyer may choose to order, but the buyer does not agree to order any quantity of such commodity, the contract would be wanting in mutuality and void. The buyer not being bound, the seller would be free to disregard the agreement. To hold otherwise would enable the buyer to give orders and take the commodity if prices fall, and to give no orders and refuse to take it if prices should rise. It is axiomatic that such a contract would be wanting in mutuality and void. Bishop on Contracts (2d Ed.) § 78.

[2] 2. But where the buyer has an established business, it is com-

petent for the seller to contract with him to furnish him with such supplies as may be needed by him during a certain period; for in such case both parties would be bound, the one to furnish and the other to take what was needed. Klipstein & Co. v. Allen (C. C.) 123 Fed. 992. Business necessities require contracts of this class, though more or less indefinite, to be upheld. Thus a hotel keeper could purchase his necessary supply of ice, a foundry all the coal needed for the season, or a furnace company its requirements of iron. Crane v. C. Crane & Co., 105 Fed. 869, 45 C. C. A. 96, and cases there cited. In such cases it can be ascertained with some degree of certainty the quantity needed, and the intention of the parties, it is presumed, was to contract in reference to such quantity. The business being established, the purchase is an incident to it, and the purchase would be reasonably necessary, whether the prices of the article rose or fell. Such contracts, are, therefore, held valid.

The contract in question here is certainly valid to the extent that Swift & Co. agrees to sell, and the Walker Manufacturing Company agrees to buy, "175,000 pounds to 225,000 pounds of beef trimmings, fresh or frozen." To the extent of the larger named number of pounds—and more besides—the contract has been performed. The controversy arises on the agreement by the seller to "take care of buyer's needs this year." It is contended by the defendant that the contract, so far as the clause quoted is concerned, comes within the first class above described, and that it is therefore void; but that, if the addition is valid, it only required the defendant to furnish the buyer with a sufficient quantity to fill orders received by the buyer and a reasonable amount over to keep it in stock. The plaintiff, on the other hand, insists that the agreement of the seller to "take care of buyer's needs this year" comes within the second class described, and is binding on both parties, and that it required the defendant to furnish a sufficient quantity to keep the buyer's plant in operation to its full capacity for the year.

[3] The questions presented by these contentions may not be entirely free from doubt if, in the consideration of the contract, we were confined to what appears in the writing. We are not so confined. We look, not only to the language employed, but to the subject-matter, the course of dealing between the parties, and all the relevant surrounding circumstances. The court is not shut out from the light which the parties enjoyed when the contract was made. In determining the meaning of the words used and the intention of the parties, we place ourselves in the situation of the parties, so as to view the circumstances as they viewed them. In that way we endeavor to get at the correct application of the language to the things described and at the real intention of the parties.

[4] The plaintiff—the buyer—owned and operated a large plant or cannery, equipped with machinery for the manufacture of canned goods in which beef was used. The defendant—the seller—was engaged in the wholesale business of packing, selling, and shipping meat, including beef. The plaintiff had bought beef from the defendant for four or five years before the contract sued on was made. It does not

appear that the plaintiff had been accustomed to run its factory to its full capacity, without regard to orders that it had received and agreed to fill. Its course of business was to manufacture goods to fill orders received or sales made, and to keep on hand a sufficient supply to fill orders that would probably be received. The fact that the amount of the commodity sold was stated at from "175,000 pounds to 225,000 pounds" when the contract was first prepared shows that there was uncertainty as to what quantity the plaintiff would order. It knew the capacity of its plant, and if it had been the intention of the parties the one to sell and the other to buy up to the capacity of the buyer's plant to manufacture, it is not probable that the limit of 225,000 pounds would have been first considered. The capacity is shown to be 10,000 pounds a day, or about 3,000,000 pounds a year. It is more likely that the maximum amount was first fixed with a view to the probable sales that would be made by the buyer; it being its custom to manufacture for such sales. The fact that the goods were to be furnished as ordered by the buyer points in that direction. When the clause was added binding the seller to "take care of buyer's needs this years," if the parties had meant a sale of sufficient quantity to run the manufactory according to its reasonable capacity, the amount would probably have been approximated by increasing the maximum named in the contract as originally prepared, although the clause in question was added. The additional clause was added, we think, to increase the maximum quantity, in view of the increase of the buyer's business and the uncertainty of the extent of such increase. The seller was not expected to furnish, nor the buyer to receive, a quantity above the maximum first named in excess of the sales made, and a reasonable supply of stock to be kept on hand as shown by the course of the buyer's business. The addition to the contract was made, we think, to cover the amount that the buyer's sales might exceed the maximum quantity first named.

The petition is mainly based on the assertion that the seller did not supply sufficient beef to the buyer to enable it to comply with its usual course of business. But the evidence shows without conflict that sufficient beef was furnished for this purpose, a quantity largely in excess of 225,000 pounds, and sufficient to fill all of buyer's sales to its customers and to furnish the usual stock to be kept on hand. The buyer now contends that it was entitled to demand enough beef to keep its plant in continual operation, without regard to its needs as shown by sales and orders. In view of the circumstances shown by the record —which we need not quote further—we are of the opinion that, conceding the clause in question to be binding, and that plaintiff was entitled to have delivered to it more than 225,000 pounds, the defendant was not required to do more than to furnish the buyer with a sufficient quantity of the article sold to fill all orders received for it by the plaintiff and a reasonable amount in excess to keep in stock to fill orders that might probably be received. This the defendant did, and therefore there was no breach of the contract.

The rulings of the Circuit Court, both on the pleadings and the evidence, conform to these views, and the judgment is therefore affirmed.