## THE GLEANER.

(District Court, N. D. California, First Division. February 1, 1917.)

### No. 15017.

SHIPPING ☞37—VALIDITY OF CHARTER—MUTUALITY.

A charter party for space for the carriage of all logs offered by the charterer from certain named Mexican ports to San Francisco at a stated rate of freight required the vessel "to stay and receive at ports mentioned all cargo that may be ready for shipment to any amount of logs up to convenient carrying capacity." There was no provision requiring the charterer to furnish logs for shipment at any of the named ports. *Held*, that the charter was void for want of mutuality, and that the vessel was not liable for its breach for failing to stop at one of the ports, although she did stop and take cargo at others.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 127–135.]

In Admiralty. Suit by the Dieckmann Hardwood Company against the American barkentine Gleaner. On exceptions to amended libel. Exceptions sustained.

Andros & Hengstler and G. W. Bell, all of San Francisco, Cal., for libelant.

Denman & Arnold, of San Francisco, Cal., for claimant.

DOOLING, District Judge. The amended libel counts on a breach of a charter, in that the barkentine Gleaner failed to call at Tiopa, on the west coast of Mexico, to take on board 326 logs which libelant had there ready for loading thereon, to be carried to San Francisco. The material provisions of the charter party, which is made a part of the libel, are the following:

"That the managing owner agrees on the freighting and chartering of enough space of said vessel to carry all cargo offered by charterers, for a voyage from Tiopa and/or Perula and/or Tenacatita to San Francisco. Charterers engage to furnish logs at loading place herein provided, of such lengths and size as she can conveniently handle with her usual equipment. Vessel agrees to stay and receive at ports mentioned all cargo that may be ready for shipment to any amount of logs up to convenient carrying capacity of the vessel." "Charterer agrees to pay * * * for the use of the vessel during the voyage aforesaid, payable on the right and true delivery of cargo at the port of discharge, for each one thousand feet, gross board measure, delivered at San Francisco, six dollars."

The libel alleges that the Gleaner did enter upon and partially, but imperfectly, perform the conditions of the charter party, by calling at some, but not all, of said places and there receiving and accepting logs tendered by libelant for carriage to San Francisco, and then proceeding on said voyage thereto, but that in breach of said charter party she did not call at Tiopa, despite the fact that libelant had there at the loading place 326 logs ready for loading.

While the charter provides that the vessel will carry all cargo offered by the charterers, the charterers are not bound by it to offer any cargo at all. The contract in this respect is absolutely without mutuality. In American Cotton Oil Co. v. Kirk et al., 68 Fed. 791, 15 C. C.

A. 540, a contract to sell and deliver 10,000 barrels of oil, at a stipulated price, in such quantities per week as the buyer might desire, to be paid for as delivered, but which contained no agreement on the part of the buyer to purchase and receive any particular quantity of oil, was held to be not binding, for want of mutuality, by the Circuit Court of Appeals for the Seventh Circuit; the court saying:

"There is no mutuality of promises for the sale of a definite or ascertainable quantity of oil. Suppose the plaintiffs had decided upon ordering 6 barrels of oil per week, or 1 barrel for every working day. That would require 32 years for the fulfillment of the contract. And we can discover no way, by the terms of the contract, whereby the defendant could put the plaintiffs in default, * * * because the amount and times of ordering are left wholly to the plaintiffs."

In Walker Mfg. Co. v. Swift & Co., 200 Fed. 529, 119 C. C. A. 27, 43 L. R. A. (N. S.) 730, the Circuit Court of Appeals for the Fifth Circuit uses the following language:

"If a seller agrees to deliver such quantities of any commodity as a buyer may choose to order, but the buyer does not agree to order any quantity of such commodity, the contract would be wanting in mutuality and void. The buyer not being bound, the seller would be free to disregard the agreement. To hold otherwise would enable the buyer to give orders and take the commodity if prices fall, and to give no orders and refuse to take it if prices should rise. It is axiomatic that such a contract would be wanting in mutuality and void."

By the charter party under consideration the charterers are under no obligation to furnish any cargo whatsoever. If the contract be valid they are in a position to secure other carriage for their cargo if freights should decline, but to insist upon the terms of the charter if freights should advance. The vessel might make a voyage to the west coast of Mexico for the purpose of receiving cargo from the charterers, there to be told that the charterers had no cargo to offer, and the owners would be without remedy, for the charterers are obligated to nothing save to pay $6 per 1,000 feet for the carriage of such logs as they may choose to offer. The contract, therefore, being without mutuality, is void.

It is claimed, however, that the charter constitutes a continuing offer on the part of the vessel, which became binding when the logs were provided for carriage at the loading place at Tiopa. But this is only saying that a contract void for lack of mutuality becomes valid upon the demand of the party not bound that the party bound should comply with its terms. But such demand created no obligation on the part of the charterers, as they were just as free to withhold the logs from shipment on the Gleaner after they were brought to Tiopa as they were before. It is also claimed that, as the vessel performed part of the contract by taking on logs at the other ports, she was bound to complete it and take on the logs at Tiopa. That might be true, if the charterers, by furnishing logs at the other ports, had obligated themselves to furnish logs, also, at Tiopa. But they had not. They were still as free from any further obligation to the vessel, as they had been theretofore.

In the American Cotton Oil Co. Case cited above, the contract had been carried out to the extent of the delivery of 9,490 barrels of oil

out of the 10,000 barrels provided for, but the court held the contract to be unenforceable as to the remaining 510 barrels.

As the amended libel is based upon a void contract, the exceptions thereto must be sustained; and it is so ordered.