## THE UNITED STATES PRINTING & LITHOGRAPHING COMPANY v. CRITES ET AL., PARTNERS, ETC.

*Contracts—Subject-matter definite, when—Agreement to supply requirements—Partnership liability—Similar business but firms not identical.*

1. A contract for requirements, as distinguished from one for wants or desires, is enforceable; but it is only so where there is an established business furnishing a basis for estimating the probable extent of such requirements.
2. A contract for supplies, made in a partnership name for the entire requirements of such partnership for a definite period, cannot be construed to cover the requirements of the partners in the same kind of business separate and apart from the partnership in whose name the contract was made.

(Decided June 16, 1921.)

ERROR: Court of Appeals for Pickaway county.

*Mr. C. A. Leist* and *Mr. Charles H. May,* for plaintiff in error.
*Mr. Charles Gerhardt,* for defendants in error.

MAUCK, J. The plaintiff brought its action in the common pleas against H. M. Crites and Herman Shade, the defendants, who were partners doing a canning business under the partnership name of C. E. Sears & Company, to recover $3,361.77 for a quantity of labels manufactured and furnished such partnership, for the season of 1916, under a written contract. The defendants, by cross-petition, allege that by the terms of the contract the plaintiff agreed to furnish labels for defendants' requirements for three years following the date of the contract, December 24, 1914, and that plaintiff refused to furnish such requirement for the year 1917, so that defendants

were compelled to secure the required labels elsewhere at a price exceeding the contract price with plaintiff in the sum of $4,937.75. The defendants ask counterclaim in that amount, and for judgment for the difference between the amount owed by them to plaintiff on the labels furnished for 1916. The plaintiff by way of reply alleges that at the time of making the contract in controversy the defendants as a partnership under the name of C. E. Sears & Company were operating canning factories at Circleville, Washington C. H., Canal Winchester, London and Stoutsville, and at no other place, and that the labels contracted for were for the sole requirement of said business of the said partnership, and then follows a threefold defense to the claims asserted in the cross-petition:

(1) That by February 10th of each year C. E. Sears & Company was to furnish plaintiff with specifications for the printing of the labels for such year; that no specifications were furnished for the year 1917, nor was any demand made by the said C. E. Sears & Company for the furnishing of the labels for that year.

(2) That the plaintiff was ready and willing to furnish said partnership of C. E. Sears & Company with its label requirements for 1917, but that said partnership in January, 1917, sold and delivered its factories and business, and its right and its members' right to do a canning business, and that said defendants had no right to require any delivery of labels for that year.

(3) That while it admits that it furnished no labels for 1917, the plaintiff denies that the defendants purchased labels of the amount and at the price set out in the cross-petition and says that if

they were so purchased they were purchased for some other use and business than that of C. E. Sears & Company, for whose use and requirements the contract was made.

There is no question that there is due the plaintiff the amount sued for in the petition, the one question in controversy being whether the defendants can recover on their cross-petition for a breach of the contract. The governing provision of the contract reads as follows:

"In consideration of the prices and terms hereinafter named, The United States Printing & Lithographing Company agrees to furnish, and C. E. Sears and Company agrees to purchase from The United States Printing & Lithographing Company, its entire requirements of labels as herein described for a period of three years from date of this agreement."

For the purchaser this agreement is signed in the firm name "C. E. Sears & Co." The members of the partnership, the signature of which was thus appended, were the defendants, H. M. Crites and Herman Shade.

The court below, to whom this case was tried without a jury, found for the defendants. That court was of the opinion that inasmuch as a partnership in this state is not an entity, and has no existence apart from that of the individuals comprising it, the contract in question was in fact made by H. M. Crites and Herman Shade, and for their benefit, and that when the contract was signed it bound them to accept, and the plaintiff to furnish, the "entire requirements of labels" of H. M. Crites and Herman Shade for the time specified. This construction of the contract leads to the view that

Messrs. Crites and Shade were bound to accept, and the plaintiff to furnish, any number of labels that might be required by the defendants in any canning operations in which they might be engaged, under any name or any where, during the life of the contract. If this be the true construction of the contract, can the contract itself survive? If because partnership entities are not recognized in Ohio we are bound in the construction of this contract to forget that there is such a thing as a partnership and that the contract under question is exclusively the personal requirements of the individuals mentioned, then the contract in question is one under which the plaintiff agrees to sell, and the defendants agree to purchase, the entire requirements of labels of H. M. Crites and Herman Shade, whether much, little or none, whether associated together only, or with others, whether in Ohio or elsewhere. The effect of this construction is illustrated in one of the items for recovery entering into the judgment rendered on the cross-petition. Messrs. Crites and Shade were owners of a two-thirds interest in a partnership that operated a plant at London, Ohio. The other partner, Mr. Fishbaugh, owning the other one-third interest was a stranger to the contract. Because Messrs. Crites and Shade were interested in that plant, and because its operation necessitated the use of labels, it was held that the plaintiff was bound to furnish the labels because of the interest of Mr. Crites and Mr. Shade. Manifestly the needs of the purchasers might thus have been indefinitely extended. If whenever they acquired an interest in a plant their requirements were extended to cover their acquirements, the maximum requirements of the purchasers were incapable of calculation; and,

conversely, as they parted with their interests, and therefore ceased to require labels, there was no irreducible minimum above zero which they were bound to accept. Such a construction is too indefinite to constitute a binding engagement. (Page on Contracts [2 ed.], Section 97.) It is true that it is not necessary that the contract in unambiguous language set forth the precise quantities contracted for. In modern commercial activities contracts for "requirements" are not unusual, but there must be some fixed conditions or circumstances from which the quantities involved in the contract can at least be approximated.

"The context of a contract or the surrounding circumstances, or both, may give sufficient certainty to terms which, without such aid, would be indefinite and uncertain." Page on Contracts (2 ed.), Section 100.

While the courts generally have held enforcible contracts for requirements, as distinguished from contracts for wants or desires, they have found such contracts to possess the necessary mutuality because the requirements had a fixed business basis and were not the fluctuating or sporadic requirements of individual activities.

"It seems that to avoid the want of a mutuality in a contract for the sale of all of a certain commodity which the buyer may need it is necessary that the buyer should have an established business by which the amount which he may need may be estimated with reasonable certainty." 23 Ruling Case Law, 1267.

As is said by the editor in a monograph on this subject in the newest series of selected cases, 7 American Law Reporter, 498:

"As thus construed the term 'requirements' is held to relate to and cover the quantity of commodity or material which the business of the buyer necessarily requires for the term of the contract, the buyer being engaged in some business which ordinarily will make it necessary for him to use a quantity of the commodity or material to which the contract relates."

The United States circuit court of appeals for this district in *Lima Locomotive & Machine Co.* v. *National Steel Castings Co.*, 155 Fed. Rep., 77, 11 L. R. A. (N. S.), 713, 718, had under consideration a contract for furnishing "all your requirements in steel castings for the remainder of the present year." The contract was sustained as sufficiently definite. This was because the purchaser was engaged in an established business, whose needs were understood by the seller. The court said at page 79:

"The defendant was engaged in an established manufacturing business which required a large amount of steel castings. This was well known to the plaintiff, and the proposition made and accepted was made with reference to the 'requirements' of that well-established business. The plaintiffs were not proposing to make castings beyond the current requirements of that business, and would not have been obliged to supply castings not required in the usual course of that business. By the acceptance of the plaintiff's proposal, the defendant was obliged to take from the plaintiff all castings which their business should require."

"But where the buyer has an established business, it is competent for the seller to contract with him to furnish him with such supplies as may be

needed by him during a certain period; for in such case both parties would be bound, the one to furnish and the other to take what was needed. *Klipstein & Co.* v. *Allen* (C. C.), 123 Fed., 992. Business necessities require contracts of this class, though more or less indefinite, to be upheld. Thus a hotel keeper could purchase his necessary supply of ice, a foundry all the coal needed for the season, or a furnace company its requirements of iron. *Crane* v. *C. Crane & Co.,* 105 Fed., 869, 45 C. C. A., 96, and cases there cited. In such cases it can be ascertained with some degree of certainty the quantity needed, and the intention of the parties, it is presumed, was to contract in reference to such quantity. The business being established, the purchase is an incident to it, and the purchase would be reasonably necessary, whether the prices of the article rose or fell." *T. B. Walker Mfg. Co.* v. *Swift & Co.,* 200 Fed. Rep., 529, 43 L. R. A., N. S., 730, 733.

It will not be profitable, however, to enter upon an extended review of the cases on contracts for requirements. This has been done in 7 American Law Reports, 498, and elsewhere. Running through these cases is the principle that a sufficient measure of definiteness is found in the fact, and only in the fact, that an established business has a fairly fixed basis of requirements, and that a mutuality of obligation arises only because such established business can not reasonably be expected to continue to function without purchasing some of the commodity contracted for, and that the seller is bound by the contract to accept such an amount as the business actually uses.

A different construction of the contract in the instant case relieves the contract of all suspicion of invalidity. The contract was made and signed by C. E. Sears & Co., and was for the expressed purpose of furnishing that partnership "its entire requirements of labels." The partnership doing business under that name was a well-established business concern. It had registered as a partnership in 1913. In other years, prior to the making of this contract, it had purchased its labels from the plaintiff, and the latter had knowledge of the amount of labels generally used by that partnership. The inference would seem to be plain that the contract was therefore made not only with reference to the requirements of those who constituted the firm of C. E. Sears & Co., but with reference to that firm. The labels were for the business established and conducted under that firm name, and being for the requirements of that well-established business it bound the plaintiff to furnish such requirements and no other; and bound that firm, and no other, to buy of the plaintiff such labels as should be used in the pack of 1917. It is true that a partnership in Ohio is not a legal entity, as is a corporation, enjoying rights apart from the rights of those constituting the partnership. It is, however, a quasi-legal entity, and owns property and incurs liability as such (*Andres* v. *Morgan, Trustee,* 62 Ohio St., 236, 244), and cannot be said by those constituting it to be so illusory and unsubstantial as to be incapable of describing and measuring the business actually done by those creating and using it. In 1916 all the plants of C. E. Sears & Company were sold. The defendants parted with the right to do business under that name, and parted with the business and the

instrumentalities of the business theretofore con-
ducted and owned under that name.   The business
and the instrumentalities of the business of C. E.
Sears & Company were therefore non-existent after
the sale in November, 1916; and there being no such
business, and no such instrumentalities, there were
no requirements of labels on the part of C. E. Sears
& Company.   The fact that Mr. Crites and Mr.
Shade had other and new requirements in another
and new business did not meet the situation, for their
new requirements were not the requirements with
reference to which the contract was made.   One of
the new "requirements" on which the judgment be-
low is predicated, as before alluded to, was for the
new partnership composed of Messrs. Crites, Shade
and Fishbaugh.   Is it conceivable that the plaintiff
could have held Mr. Fishbaugh to this contract
made by and for C. E. Sears & Company had the
new partnership refused to carry out the contract
of the old partnership?   Manifestly not.   Yet this
is the test of that mutuality of obligation which the
law recognizes.   6 Ruling Case Law, 688.

"Where the buyer exercises good faith and is
free from fraud in disposing of, or making a change
in, his business, such change will have the effect of
releasing him from the obligation of the contract to
purchase his requirements of a certain commodity
used in his certain business, to the extent that the
change in the business does away with the necessity
for the use of the commodity.

"Thus, in *Drake* v. *Vorse* (1879), 52 Iowa, 417, 3
N. W., 465, it is held that under a contract to fur-
nish a manufacturer with all the castings of a cer-
tain kind which he may want during a designated
period of time, where the buyer discontinues the

manufacturing business individually and engages in it with another as a partnership, he is under no obligation to take any castings as an individual and the partnership is under no obligation under the contract." 7 American Law Reports, 507.

That is to say, a contract for requirements is strictly limited to the particular business of the identical persons with reference to whom the contract is made. *Laclede Construction Co.* v. *Moss Tie Co.,* 185 Mo., 25, 84 S. W. Rep., 76.

The court below accordingly erred in allowing a recovery on the cross-petition of the defendants.

The defendants having admitted their liability to the full amount claimed in the petition, and being on the conceded facts not entitled to any relief by way of set-off or counterclaim, under the construction herein given to the contract, the judgment of the common pleas court is reversed, the cross-petition of the defendants is dismissed, and judgment rendered in favor of the plaintiff in accordance with the prayer of the petition.

*Judgment reversed, and judgment for plaintiff in error.*

SAYRE and MIDDLETON, JJ., concur.