### JOHN ANTONE v. DELBERT MILES AND J. B. WHITFIELD.

#### Decided October 24, 1907.

**1.—Landlord and Tenant—Lien—Interest in Crop.**

Whether or not one who lets premises to another in consideration of a part of the crops to be grown thereon as rent has a specific undivided interest in the crops when gathered, as distinguished from a lien, depends entirely upon the terms of the agreement between the parties.

**2.—Same—Pleading.**

When the record discloses no contract other than an ordinary one of renting land on shares and the landlord sues for a personal judgment for supplies and advances with foreclosure of his lien therefor, such lien being inconsistent with ownership in him, neither the pleading nor the evidence authorizes an instruction to award plaintiff a half interest in specific property sold by the tenant with foreclosure of his lien therefor.

**3.—Lien—Question of Fact.**

It is for the jury to determine the existence of a lien and the right to its foreclosure.

**4.—Lien—Waiver—Permission to Sell.**

The mere fact that a landlord permits the tenant to sell some portion of the crops in the market without objection, is not alone a sufficient reason for purchasers to conclude that he has waived his lien on the entire crop.

Appeal from the County Court of Red River County. Tried below before Hon. J. M. Deaver.

*C. M. Chambers,* for appellant.—Where landlord furnishes land, team, tools and feed and tenant furnishes labor, landlord has something more than a landlord's lien on crops; he has a specified interest in crops themselves. Horseley v. Moss, 5 Texas Civ. App., 341; Miles v. Dorn, 40 Texas Civ. App., 298.

The removal of agricultural products for purpose of being prepared for market, is not a waiver, and a gin, where cotton is carried by tenant is not an "Open Market." Sayles Texas Civil Stats., art. 3239; Holt v. Miller, 32 S. W. Rep., 823.

A landlord has a preference lien on agricultural products grown on his premises, so long as they shall remain on rented premises

and for 30 days hereafter, and burden of proof is on claimant to show a waiver of said lien. Sayles Civil Stats., art. 3237; American Cotton Co. v. Philips, 31 Texas Civ. App., 79; Sanger v. Magee, 29 Texas Civ. App., 397; Johnston v. Kleinsmith, 33 Texas Civ. App., 236; Bivins v. West, 46 S. W. Rep., 112.

*Eugene Black,* for appellee Whitfield.—As to whether or not, the landlord has a specific interest in the tenant's crop or merely a lien to secure his rent which is to be paid with a portion of the crop is a question of intention to be determined from the contract between the landlord and the tenant. Texas & Pacific R. R. Co. v. Bayliss, 62 Texas, 575; Horseley v. Moss, 5 Texas Civ. App., 341.

The court did not err in charging the jury that if plaintiff had allowed and permitted the defendant, Miles, to sell said cotton in an open market, then to find in favor of the intervener. Gillam v. Smither, 33 S. W. Rep., 984. Planters Compress Co. v. Howard, 41 Texas Civ. App., 285.

HODGES, ASSOCIATE JUSTICE.—This suit was originally instituted in the Justice Court of Precinct No. 4 of Red River County, by John Antone, appellant, against Delbert Miles, one of the appellees, to recover the sum of $198.65 claimed to be due for supplies and advances furnished by the appellant to Miles, during the year 1906, to enable the latter to make, gather, secure and house a crop on certain rented premises.

The facts show that Miles was Antone's tenant during the year 1906, and raised a crop of cotton on the former's premises. While the record does not definitely disclose what rent he was to pay Antone, yet we gather inferentially from the uncontroverted facts that Antone was to furnish the land, team, tools and feed the team; and that Miles was to perform the labor of making and harvesting the crops; and each was to receive one-half. Prior to the filing of this suit Miles had gathered and sold five or six bales of cotton from the rented premises, without any objection from his landlord. About a week, or more, before the institution of this suit Antone instructed Miles not to sell any more of his cotton, claiming that he (Antone) held an account for supplies which had not been paid. Subsequently, however, Miles gathered a bale of cotton and sold it to the intervener, J. B. Whitfield, one of the appellees herein, without the knowledge or consent of his landlord. Antone then instituted this suit against Miles upon his account for supplies, procured the issuance of a distress warrant and caused the same to be levied on the bale of cotton purchased by Whitfield from Miles, and sought to subject it to the payment of his claim.

Whitfield at first filed a claimant's affidavit and bond in order to get possession of the bale of cotton, but subsequently intervened in this suit, and set up his claims to the cotton. After specially excepting and demurring to the proceedings instituted, he pleaded substantially as follows: That he was the legal owner of the bale of cotton levied upon, by virtue of a valid purchase of the same from the defendant, Delbert Miles; and now claims the cotton as

his own, free from any claim of Antone's; that he had purchased the cotton in open market, from said Miles, before the commencement of this suit; that Miles had a good and perfect right to sell the same, and that Antone had so held him out to the world as having that right, and that he did in fact have that right; that plaintiff, Antone, had permitted, acquiesced in, authorized and ratified previous sales of cotton off the rented premises by said Delbert Miles, and had made him his agent to sell said cotton, and is now estopped to come in and deny that the said Miles had the authority to sell the cotton involved in this suit. He also denied that Antone had any lien upon the bale of cotton at the time it was sold to the intervener; and says that if Antone ever had any lien on said cotton, that it had been fully satisfied by other property of the defendant, Miles, which said Antone had appropriated since the beginning of this suit and applied as a credit upon the account for which this suit was brought. He also asked that if Antone had not so applied said property to the credit of Miles on said account, the court order it done.

The cause was tried before a jury in the Justice Court, which resulted in a verdict in favor of Antone against Miles, on the account, for the sum of $131.10, and in favor of the intervener, Whitfield, for the bale of cotton. Appellant then appealed to the County Court of Red River County, where the case was again tried before a jury and a verdict rendered in favor of the appellant against Miles for the sum of $82.65, and in favor of the intervener, Whitfield, for the bale of cotton. From that judgment appellant, Antone, prosecutes this appeal.

It appears from the statement of facts, that Antone held a claim amounting to the sum of $198.66 against Miles for supplies furnished the latter during the year 1906 to enable him to make and gather a crop on the rented premises. No question is raised as to Antone's landlord's lien upon the bale of cotton bought by Whitfield from Miles, and of his right to have it subjected to the payment of this supply claim, unless it were defeated by the facts set forth in Whitfield's plea of intervention.

Appellant's first assignment of error complains of the refusal of the court to give the following charge requested by him: "I charge you, as the law, at the request of the plaintiff, that the uncontradicted evidence shows that plaintiff had an undivided one-half interest in the bale of cotton purchased by J. B. Whitfield, intervener, from Delbert Miles, and is entitled to have his landlord's lien foreclosed for that amount, whatever you may believe the other facts to be." This charge must have been framed and requested upon the assumption that the mere letting of land to another in consideration of rent to be paid in a portion of the crop, gave the landlord title to that portion he was to receive. Appellant follows this assignment of error with the following proposition: "Where the landlord furnishes land, team, tools and feed, and tenant furnishes labor, the landlord has something more than a lien on crops, he has a specified interest in the crops themselves." Whether or not one who lets premises to another in consideration of a part of the crops to be

grown thereon as rent, has a specific undivided interest in the crops when gathered, as distinguished from a lien, depends entirely upon the terms of the agreement between the parties. (Tignor v. Toney, 13 Texas Civ. App., 518; Mansfield v. Neese, 21 Texas Civ. App., 584; St. Louis & S. W. Ry. v. Laws, 61 S. W. Rep., 498; Taylor's "Landlord and Tenant," sec. 24.)

There is nothing in the record in this case to show that this was other than an ordinary contract of renting land on shares. Appellant, in the statement of his case, shows that he is seeking to recover a judgment for a sum claimed to be due for supplies, and asks for a personal judgment against the appellee, Miles, and a further judgment for the foreclosure of his landlord's lien on the bale of cotton bought by the intervener, Whitfield. He nowhere discloses the fact that he claimed ownership of one-half of the cotton, but merely sets up a lien. Ownership and lien are inconsistent interests, and can not exist together in the same person as to the same subject matter. There was neither pleading nor evidence upon which to base such instructions to the jury.

This charge is also subject to the further objection that it undertook to have the jury transcend its authority. It was equivalent to a peremptory instruction to the jury to either foreclose appellant's landlord's lien on an undivided one-half of the bale of cotton, or to find that it should be foreclosed. Neither of these is within the province of the jury in such cases. It is the duty of the jury, under proper instructions from the court, to find the fact as to whether or not the lien sought to be enforced exists upon the property involved; and if found to exist, to state that finding in the verdict. It is then the province of the court to direct the foreclosure as a part of its judgment. Hence the court did not err in refusing this special charge.

The next assignment of error attacked the following portion of the court's general charge: "If you believe, from the evidence before you, that the cotton which is the subject of this suit was raised upon the farm of the plaintiff, and that he had a lien upon the same for money and supplies advanced to said defendant during the year 1906; but you should further believe, from the evidence before you, that the plaintiff had allowed and permitted the said defendant to sell said cotton in an open market; then you will find for the intervener." The appellant objects to this charge, because there was no evidence to support the issue of fact there submitted. We believe this objection should be sustained.

In his plea of intervention the intervener relied upon two defences; one was that Miles had the authority from Antone to sell the bale of cotton; the other, that the debt from Miles to Antone, upon which the lien was based, had been paid previous to the trial of the cause.

In returning a verdict for the plaintiff against the defendant, for $82.65, in the court below, the jury found against intervener upon his plea of payment; and their finding in his favor could only have been upon the plea that Miles had permission from Antone to sell the cotton. It is true that intervener alleges that Miles had

made other sales by Antone's permission, and claims that the latter was thereby estopped from questioning the authority for the making of this sale to the intervener; yet the allegations are not such as to amount to a plea of estoppel, nor did the facts adduced upon the trial justify a finding against the appellant upon that issue even had the plea been made. The plea that the defendant had the authority from appellant to sell the cotton was an affirmative defence, and it devolved upon the intervener to establish it by sufficient evidence to justify the jury in returning a verdict in his favor. The testimony upon that issue is substantially as follows: The intervener, Whitfield, testified that he purchased the cotton involved in this suit, in the following manner: Miles brought a sample of the cotton from the gin in Detroit and carried it to all the buyers and had them bid on it, and also had intervener to bid on it; that after getting these bids Miles sold the cotton to intervener, got a float and had it hauled from the gin to the cotton yard, and received his pay, amounting to about $51, for the cotton; that before that time during the fall of 1906 he bought other cotton · from Miles, but could not say whether it was one or two bales, but he remembered one bale for certain. Harry Heath, another witness for intervener, testified that he was a cotton buyer in the town of Detroit, and knew that during the fall of 1906 Miles had marketed several bales of cotton there before the sale of this particular bale— thought it was five or six; that he had bid on the different bales of cotton, and bought some of them—thought one or two bales; that he bought them from Miles in his own name, and that Antone had not objected to the selling, but was not present at the time the cotton was sold. Harris, another cotton buyer, testified for the intervener to substantially the same effect. J. H. Sharp testified that he was the manager of the gin plant at Detroit, and ginned six bales of cotton for Miles in the fall of 1906; that the cotton was ginned in Miles' own name and delivered to him from time to time as it was ginned; that Antone never objected to the cotton being delivered to Miles, never gave him any orders not to deliver this particular bale of cotton, and said nothing at all about the matter. Antone, in his own behalf, testified that he forbade Miles selling any more cotton a short time before this particular bale of cotton was sold; that Miles had sold several other bales of cotton off the rented premises before this, and had paid him his rent out of them, and also some on his account for money and supplies, but had not been paying him as much on this account as he should, and he told him not to sell any more cotton. He had not objected to Miles selling the cotton before this, but told him not to sell any more before he had sold the particular bale in question. Said he did not tell Whitfield, or any other cotton buyer in Detroit, that he had forbidden Miles selling any more cotton; that he did not know anything about Miles selling the particular bale of cotton in controversy until after it had been sold. He was in Paris at the time, but that as soon as he got back and ascertained that the bale had been sold, he sued out a distress warrant and had the cotton seized. Both Joe Antone and John Yates testified that they had

heard appellant tell Miles not to sell any more cotton off the rented premises. Joe Antone stated that this was about a week before the sale of this bale of cotton. Both of them stated that they had not told Whitfield or any of the other buyers about what they had heard John Antone tell Miles.

We think this testimony established the fact, beyond controversy, that Miles had no authority from Antone to sell the cotton involved in this suit; and if proper assignments had been presented raising the issue of the insufficiency of the evidence to sustain the finding of the jury, we should feel it our duty to set the verdict aside and reverse the cause, upon that ground alone. We think that to justify a trial court in instructing a jury upon an issue of fact, there should not only be evidence tending to establish that fact in the minds of the jury, but that evidence should be sufficient to, either alone or in connection with other evidence upon correlative issues, sustain the finding of the jury. (International & G. N. Ry. Co. v. Hall, 12 Texas Civ. App., 11; Galveston, H. & S. A. Ry. Co. v. Faber, 77 Texas, 155.)

We are of the opinion, therefore, that the evidence is wholly insufficient to authorize the court to give the charge complained of. On the contrary, we think the court should have peremptorily instructed the jury to return a verdict for the appellant against the intervener upon the issue as to whether or not Antone still had a landlord's lien upon the bale of cotton. The lien still exists unless lost by Miles having authority from Antone to sell the cotton. The mere fact that a landlord permits a tenant to sell some portion of his crops in the market without objection, is not alone a sufficient reason for purchasers to conclude that he had waived his lien on the entire crop. (American Cot. Co. v. Phillips, 31 Texas Civ. App., 79; Sanger v. McGee, 29 Texas Civ. App., 397; Johnston v. Klinesmith, 33 Texas Civ. App., 236; Bivins v. West, 46 S. W. Rep., 112.)

That portion of the judgment of the County Court which awarded a recovery for the appellant, Antone, for the sum of $82.65 against Delbert Miles, is affirmed. But so much of it as awarded the bale of cotton levied on to the intervener, Whitfield, is reversed and here rendered for the appellant.

*Affirmed in part and in part reversed and rendered.*