TEXAS PRODUCE EXCHANGE v. SORRELL et al.    (No. 5337.)

(Court of Civil Appeals of Texas. San Antonio. June 17, 1914. Rehearing Denied July 2, 1914.)

1. LANDLORD AND TENANT (§ 323*)—RENTING IN SHARES—NATURE OF RELATION.

Where land is rented for a share of the crop to be raised, the parties are not partners.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1350, 1351, 1355, 1356; Dec. Dig. § 323.*]

2. PRINCIPAL AND AGENT (§ 169*)—UNAUTHORIZED ACT—RATIFICATION.

There was no ratification by E. of the unauthorized act of S. in signing for both of them a contract with T., where, as soon as he knew what the contract was, though not as soon as he knew one had been signed, he repudiated it, and informed T. thereof.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 636, 637; Dec. Dig. § 169.*]

3. CONTRACTS (§ 10*)—MUTUALITY—CONSIDERATION.

A contract providing that defendants shall grow onions and deliver them to plaintiff, that plaintiff, without liability for damages on any account, shall have the exclusive right to determine when and where they shall be sold, that it guarantees that they shall receive 35 cents per crate for all fancy onions, it or some one acting for it to have the right to first inspect and determine whether they come up to the prescribed standard, and that for its services in selling it shall receive a certain per cent. of the sales price of the fancy onions, and a smaller per cent. in case of the others, is lacking in mutuality, and so without consideration, and therefore cannot be enforced against defendants.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40.; Dec. Dig. § 10.*]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by the Texas Produce Company against W. E. Sorrell and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Marcus W. Davis and Geo. M. Mayer, both of San Antonio, for appellant.

CARL, J. Appellant, Texas Produce Exchange, an Illinois corporation doing business in Texas under a permit, brought this suit against W. E. Sorrell and J. H. Evans, of Frio county, and M. B. Potts and F. L. Gregory, who reside in Webb county, and alleged substantially: That on October 11, 1913, Sorrell and Evans entered into a written agreement with Texas Produce Exchange, under the terms of which they agreed with that company to deliver free on board cars at shipping points the entire 1914 Bermuda onion crop grown and to be grown on 50 acres of land owned and controlled by said Evans and Sorrell in Frio county about four

miles from Melon, Tex.; that under said contract it was agreed that appellant was to handle the said crop of onions for the best price obtainable at the time sold, at the cost of said Sorrell and Evans, and that the proceeds of such sales, after expense of handling, including commission to the agents, were to be turned over to said Sorrell and Evans, and that such brokers and agents should have the exclusive right to determine when, how, and at what points or markets said crop was to be sold; that the company agreed and guaranteed that the owners would receive 35 cents per crate, f. o. b. loading point, for all fancy, symmetrical, dried, cleaned, bright, smooth onions, said onions to be true to type, free from sunburn, and to be not less than 2½ inches in diameter, and all such onions to be solidly packed in standard crates. The commission to be paid was 15 per cent. of the gross amount, payable at San Antonio when the produce was sold. The company was also to handle all onions not up to type at 10 per cent. of the gross amount, and a partnership agreement between Sorrell and Evans is alleged.

The contract signed having been executed by Sorrell for himself and Evans, it is further alleged that if they were not in fact partners, that Evans did not repudiate the same after he knew the existence of the same, had ratified and confirmed it, and is estopped to deny its binding effect, or the authority of Sorrell to execute the same.

The petition charges that the crop was grown and is matured ready to be harvested, and that the produce company is ready and willing to comply with the contract, but that the defendants have refused to permit the fulfilling of the contract.

It is charged that on account of the advance in the market the defendants Sorrell and Evans have conspired with their codefendants M. B. Potts and F. L. Gregory for the purpose of defrauding and defeating the company out of the benefits of said contract, by refusing to make delivery of the onions, and have refused to permit and allow the company to market and sell the onion crop in open market in accordance with said agreement, and have refused to pay the 15 per cent. commission on all onions coming up to type and specifications, and have refused to pay 10 per cent. commission on all onions not coming up to type as stipulated in the contract.

It is further charged that in order to defeat the contract Sorrell and Evans have threatened to sell the onions to Potts and Gregory, and have obligated themselves so to do, and that, unless restrained, they will do so, by reason of which the produce company will be deprived of its commissions as aforesaid; and it is alleged that Sorrell and Evans are insolvent, and plaintiff is without an adequate remedy at law. It is also charged that Potts and Gregory knew of the contract and conspired with Sorrell and Evans

to defraud the produce company; and it is alleged that the onions from said crop coming up to type and for which the company guaranteed 35 cents per crate amounted to $22,000, and that the entire crop was up to type, and the damage is placed at $3,300.

Prayer was made for judgment for $3,300; for temporary injunction to compel compliance with the contract on the part of Evans and Sorrell and to restrain all parties defendant from removing the onions or selling the same; as well as for a mandatory injunction requiring Sorrell and Evans to deliver said crop of onions to the plaintiff for sale under said contract. In the event it should be found that Evans is not bound by the contract, then the same relief is prayed for against Sorrell.

The defendants joined issue. A temporary restraining order was entered by the trial court, and on hearing the court refused to issue the injunction prayed for, and assigned as his reason for so doing the following:

"(1) Because the court is of the opinion that the contract made the basis of the plaintiff's suit is unilateral, without consideration, and without mutuality; (2) because the evidence shows that the onions involved in the suit were sold by defendants Sorrell & Evans before plaintiff applied for an injunction; (3) because the court is of the opinion that J. H. Evans and defendants Potts and Gregory are solvent."

The material parts of the contract, in so far as this case is concerned, are as follows:

"I, the undersigned grower, hereby agree to grow, produce, and deliver to the Texas Produce Exchange, or its duly authorized agents, servants, or employés, under the terms and conditions hereinafter stated, f. o. b. cars at shipping point, all my 1914 Bermuda onion crop grown and to be grown on fifty acres of land, described as follows, to wit: On land owned and controlled by W. E. Sorrell and J. H. Evans, situated about four miles west of Melon, Texas."

The next paragraph deals with the handling of same, and provides the Texas Produce Exchange shall have the exclusive right to determine how, when, and where to sell, and states that the company shall not be liable, in damages or otherwise, on account of the sale or want of sale, loss or damage so delivered. It then proceeds:

"The said Texas Produce Exchange hereby guarantees that the undersigned grower shall receive thirty-five cents per crate, free on board at loading point, for all fancy, symmetrical, dry, clean, bright, smooth onions, said onions to be true to type, free from sunburn, all to be not less than two and one-half (2½) inches in diameter, and all such onions to be solid packed in standard crates; provided, however, that the Texas Produce Exchange, or some one acting for it, shall have the right to first inspect, select, and determine whether or not said onions meet said requirements, before this guarantee shall be binding.

"In consideration for the services of the Texas Produce Exchange, under the terms of this provision of this contract, in the sale and disposition of said onions, it, the said Texas Produce Exchange, shall receive, and the undersigned grower agrees to pay it, the said Texas Produce Exchange, at San Antonio, Texas, fifteen (15%) per cent. of the gross amount for which said onions under this provision of this contract may be sold."

The last paragraph, and the only other one material here, is:

"It is further agreed that if any onions should be tendered the Texas Produce Exchange under this contract not up to the specifications hereinbefore stated, and not acceptable to said Texas Produce Exchange under the foregoing guarantee, then the undersigned grower agrees to deliver all such onions to the Texas Produce Exchange and to give it, the Texas Produce Exchange, the exclusive right and privilege to handle and sell all such onions, and for such services in the sale of said onions, I, the undersigned grower, hereby agree to pay the Texas Produce Exchange, at San Antonio, Texas, ten (10%) per cent. on the gross amount for which said onions may be sold."

This contract is signed by "W. E. Sorrell and J. H. Evans, by W. E. Sorrell," and by "Texas Produce Exchange, by Joseph Flory, Pres."

[1] It is contended by appellant that Evans and Sorrell were partners, and that as such Sorrell could bind Evans in the contract signed. Evans owned the land and rented it to Sorrell for one-third of the crop. This does not constitute them partners. They are not sharing in the profits, but are interested jointly in the thing produced. If the crop fails, the owner of the land does not stand part of the expense, but when the crop is grown each owns a certain interest, whether there is a profit or not. It has been held that where one party furnishes the land and the team to cultivate it, and the other party furnishes the labor, with stipulations, express or implied, to divide the crop between them in certain proportions, the agreement is held to be a contract of hire and not a lease. Tignor v. Toney, 13 Tex. Civ. App. 518, 35 S. W. 881. Where the agreement is for a part of the crop as rent, they are to that extent tenants in common. Sparks et al. v. Ponder, 42 Tex. Civ. App. 431, 94 S. W. 428; Fagan v. Vogt, 35 Tex. Civ. App. 360, 80 S. W. 664; Antone v. Miles, 47 Tex. Civ. App. 289, 105 S. W. 39; Rogers v. Frazier Bros. & Co., 108 S. W. 727. But they are not partners. Tiffany's Landlord and Tenant, § 253; Smith v. Schultz, 89 Cal. 526, 26 Pac. 1087; Williams v. Rogers, 110 Mich. 418, 68 N. W. 240; Rose v. Buscher, 80 Md. 225, 30 Atl. 637.

[2] The contention is made, however, that, if they were not partners so that Sorrell could sign for him, Evans ratified the same by acting on the contract after he knew his name was signed to it, and is estopped to deny the authority of Sorrell to sign. But the evidence does not bear out this theory, because it was about 60 days after the contract was signed before Evans knew anything about it, and then he did not see it, because he was down in the field and the contract was at the house. It was about 30 to 60 days more before he saw it, and when he did see it and that his name was signed to it, he asked Sorrell to write Flory and get him to explain what was meant by the commission, which Sorrell did.

"When we got Mr. Flory's answer, he [Evans] told me to write him we would not ship to him." "Yes, sir; the first time he saw the contract was the first time he didn't agree to it, to accept it. Then he told me to tell Mr. Flory he wouldn't ship it."

So it will be seen that as soon as Evans knew what the contract was he repudiated it, which fact was communicated to appellant.

The court found that the onions, the subject-matter of the suit, had been sold before the injunction suit was filed; and we have looked into the evidence to see if the finding of the court is sustained by the testimony. W. E. Sorrell said:

"I sold the onions to Mr. Potts, and sold them before these other people had a chance to get them under this contract."

Joseph Flory, the plaintiff's president, said:

"After that we received information through our inspector there, Mr. Johnson, by telephone, that they had sold that crop; phones us on Sunday they closed a contract that night at 12 o'clock, I think, and had sold it on a basis of $1.02½, and the other party was to pay for the crates."

Again Mr. Flory says:

"I made demand on the defendants in this case, and especially Mr. Sorrell and Mr. Evans, for delivery of these onions under this contract, and they said they had sold the stuff; declined to deliver them." "I stated a while ago that I made demand on Mr. Sorrell through our agent to deliver these onions to me. That was the very next day when I heard they had disposed of the crop."

This testimony is undisputed. It is not contended, as we understand, that Potts and Gregory did not, in fact, buy the crop of onions, but that they bought them with knowledge of appellant's contract and to prevent the produce company from getting same. The petition does not charge Potts and Gregory with being insolvent, but says that they conspired with Evans and Sorrell for the purpose of defrauding the plaintiff. The court finds that Gregory and Potts and J. H. Evans are solvent, and gives that as the third ground for denying the injunction. And, for that matter, Sorrell is not shown to be insolvent. It is only shown that he is a tenant and owns no land, but that does not show insolvency. And when we revert to the petition we find that the crop of onions is worth $22,000, and the evidence shows that Evans, as the owner of the land, got one-third, and Sorrell, as the grower, got two-thirds, or a little over $14,666, and, if a man with that much money is deemed insolvent in Frio county, this court is curious to know how much money is required that a citizen of that prosperous community must have in order to be considered solvent.

[3] We are well aware of the holdings of the courts that:

"It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity." Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994; Holbein v. Garza (Civ. App.) 126 S. W. 42.

But the only interest appellant has in the subject-matter of this suit is its commissions. And this brings us to the consideration of the first ground assigned by the court for refusing the injunction, viz.:

"Because the court is of the opinion that the contract made the basis of the plaintiff's suit is unilateral, without consideration, and without mutuality."

The only clause in the contract that would show anything binding upon the produce company, if there is anything at all, is what is termed the guaranty clause; because there is nothing else in the contract that binds or attempts to bind it to do anything, except possibly to perform a personal service, and it will be seen that it avoids obligating the company to do that except by implication. It is carefully stated that the company shall not be liable in damages for anything it does or fails to do; it is not liable under the contract for any rotten, decayed, or unmerchantable or bad onions; is not to be liable for damages on account of the sale or want of sale, nor for delivery or delay in transporting, "or for any other cause not the fault of said Texas Produce Exchange, its servants, agents, and employés." The company has the right to reject or refuse to handle any onions it sees fit to refuse, and is left the absolute and sole arbiter of the class, condition, etc., of the onions, and as to whether it will handle any of them. What it does consent to handle, the grower is made to give it an exclusive contract to deal with as it sees proper, and for which service the company is to receive 15 per cent. and 10 per cent., respectively. There is not a word in the contract which binds the produce company to handle the onions, but only limitations upon its liability in the event it should handle them and giving it powers and privileges.

This case is on the same footing, it seems to us, as Hazelhurst Lumber Co. v. Mercantile Lumber & Supply Co. (C. C.) 166 Fed. 191. In that case the complainant agreed with the defendant to sell and deliver to defendant all ties it could produce and ship up to January 1, 1908. A general demurrer was interposed, and the court said:

"The contention presented by the demurrer and urged by counsel for defendant is that the agreement made between the parties, as pleaded by plaintiff, is nonenforceable in law for want of mutuality of obligation. No consideration is expressed in the contract as having been paid by the one party to the other as compensation to the other for entering into the agreement. Presumably, therefore, it was thought the undertaking of the one was a sufficient consideration to bind the other.

"It is true the making of a contract by one party is sufficient to bind the other if both are by its terms bound; otherwise not. The contract pleaded purports to bind defendant to receive and pay for all ties plaintiff could produce and ship to defendant from October 2, 1907, to January 1, 1908, at the rate of $11.75 per 1,000. The number of ties agreed to be furnished by complainant is not stated. By the terms of this contract what obligation did plaintiff assume legally enforceable against it? How many ties could plaintiff have produced? How many ship to defendant? Suppose defendant had sought to enforce this contract against plaintiff, or to have maintained an action against it for damages for breaching the contract; could it not have answered defendant's demand by admitting the contract to have been made between the parties as stated, but to have further answered: 'We could produce no ties within the time specified, or, having produced ties in any amount, we could procure no cars in which to ship them to defendant, or we could not procure men and teams to draw them to a point of shipment, therefore we were not blamable.' Manifestly, such answer would be a complete defense by plaintiff to any demand presented against it by defendant, whether to enforce delivery of ties or by way of damages for breach of agreement. This being true, the contract is manifestly void in law for want of mutuality. The able opinions on this subject by Circuit Judge Sanborn in Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696, and of Judge Philips in A. Santaella & Co. v. Otto F. Lange Co. et al., 155 Fed. 719, 84 C. C. A. 145, leave nothing further to be said on the question presented on the demurrer."

If Evans and Sorrell had sought to compel the produce company to accept and handle their crop, what clause or word in the contract could they look to for aid in that task? Where does the company bind itself absolutely to do one thing, except to pay 35 cents per crate for such onions as they, acting as sole judge, may decide to accept. After giving the specifications, class, etc., of the 35-cent onions, the contract says:

"Provided, however, that the Texas Produce Exchange, or some one acting for it, shall have the right to first inspect, select, and determine whether or not said onions meet said requirements, before this guarantee shall be binding."

The courts of this state have repeatedly held that a contract which attempts to bind one party without some binding obligation on the other is unilateral and unenforceable. This has generally occurred in options on land or oil contracts where it was sought to bind the owner of the land without any corresponding binding obligation on the other party. Roberts & Corley v. McFaddin, Weiss & Kyle, 32 Tex. Civ. App. 47, 74 S. W. 105; National Oil & Pipe Line Co. et al. v. Teel, 95 Tex. 586, 68 S. W. 979, opinion by Judge Gaines, the appeal court case being in 67 S. W. 545. See, also, Jolliffe v. Steele, 9 Cal. App. 212, 98 Pac. 545; A. Santaella & Co. v. Otto F. Lange Co. et al., 155 Fed. 719, 84 C. C. A. 145.

When we examine carefully this contract, we look in vain for a single provision therein upon which Evans and Sorrell could stand and make demand that such contractual obligation be met and carried out by the produce company. The contract is artfully worded, with a view to binding the grower and leaving the company free to consider itself bound when it was pleased to be bound. The court does not mean to say that it was the purpose so to draw the contract, but parties are sometimes prone to look so well to their own interests that the rights of others are ignored. It is urged that, "as parties bind themselves, so should they be bound,"

and that is just the point. We do not see where the produce company is bound at all.

"A contract which is wanting in mutuality, or which is unfair and oppressive to one of the parties, will not be enforced against him by injunction." Joyce on Injunc. vol. 1, § 435.

And the same authority (volume 1, § 448) holds that:

"An injunction will not be granted in aid of an action for specific performance of a contract which is unilateral, and therefore will not be decreed to be specifically performed, as where the defendant has a mere option to purchase, but is under no obligation to purchase."

Judge Gaines says in Oil Co. v. Teel, supra:

"A naked agreement, by which one promises to convey to another an interest in land in consideration of money to be paid or acts to be performed by such other, but which does not bind the other to pay or to perform the consideration, as the case may be, cannot be enforced. In such case there is a want of mutuality in the agreement. The one party promises to do something; the other does not promise absolutely to do anything; hence there is no consideration to support a contract, and it is void."

That fits this case exactly, because the company has not absolutely bound itself to do anything, and its contract is unenforceable and void.

The judgment of the trial court is in all things affirmed.