### BLAIR v. COLORADO CANAL CO. et al.
### (No. 7510.)

(Court of Civil Appeals of Texas. Galveston. March 14, 1918.)

1. WATERS AND WATER COURSES ⚖➝254—SUPPLY OF WATER FOR IRRIGATION—INTEREST IN CROP—CONTRACT.

Under the contract of B., owner of land, and C., a water company, whereby B. is to plant and cultivate a rice crop, and C. is to furnish the water to irrigate it, and after it is matured B. is to harvest and sack it, and a fifth of it, as soon as sacked, is to be the absolute property of C. and is to be delivered by B. to a public warehouse, C. is the owner of a fifth interest in the rice threshed and sack-

ed, as distinguished from having a lien or claim for water furnished, though B. does not segregate C.'s share, but puts all the crop in a warehouse in his own name.

2. DEPOSITS IN COURT ⚖➝1—DISPOSITION UNDER JUDGMENT.

Plaintiff owning as claimed a fifth interest in rice, the other four-fifths being owned by defendant, and all of it being sold by their consent, and four-fifths of the proceeds paid to defendant, the other fifth passed into the registry of the court was properly adjudged to plaintiff.

3. APPEAL AND ERROR ⚖➝1064(3)—HARMLESS ERROR—ORAL CHARGE.

Giving an oral peremptory instruction, instead of a written charge, was harmless, the evidence requiring the judgment rendered, and all complaints being reviewed as fully as though there had been a written charge.

Appeal from District Court, Matagorda County; Sam'l J. Styles, Judge.

Action by the Colorado Canal Company against the Union Warehouse & Elevator Company, W. L. Blair being substituted as defendant. From an adverse judgment, defendant Blair appeals. Affirmed.

J. W. Conger, of Bay City, for appellant. Krause & Wilson, of Bay City, for appellee.

LANE, J. This suit was originally instituted by the appellee Colorado Canal Company, hereinafter called the Canal Company, against the Union Warehouse & Elevator Company, hereinafter called Warehouse Company, to recover $820.10 alleged to be its one-fifth interest in the proceeds of a crop of rice which one W. L. Blair had placed in possession of said Warehouse Company for storage and sale for the joint account of the Canal Company and Blair. W. L. Blair was thereafter made a party defendant by the Warehouse Company, with averment that both Blair and the Canal Company had authorized it to sell said rice, and that as both parties were claiming the one-fifth of said proceeds in controversy, it was holding the same as a stakeholder only, subject to the orders of the court.

The Canal Company, among other things, alleged: That W. L. Blair in anticipation of the planting of rice on 240 acres of land lying contiguous to its canal, during the year 1912, did on the 2d day of May, 1912, enter into a written contract with it, whereby Blair was to plant to rice said 240 acres of land before the 1st day of June of that year, and obtain a sufficient stand to warrant the watering of same. That he would properly cultivate all of said land and harvest and thresh all rice grown thereon. That by said contract the Canal Company agreed that it would use its best efforts to furnish to Blair sufficient water from its canal, which, together with the natural rainfall, would be sufficient to irrigate said rice crop of Blair. That said contract contained the following clauses:

---

"Both parties understanding and considering the uncertainty and hazard of furnishing water for irrigation, it is specifically agreed that in the event of lightning, strikes, storms, fire, flood, accidents to machinery or canals, lack of water occasioned by low water or divergence of current in or by overflow of the Colorado river, which may cause hindrance or partial or complete suspension of operations, such hindrance or suspension shall constitute no breach of contract and first party shall not be liable to second party for any damages thereby occasioned."

"The second party agrees to pay to the first party one-fifth of all the rice grown on the above-described land or such other land as he may cultivate under this contract, and to deliver the same to the first party at some public warehouse in Bay City, Texas, without cost of any kind whatsoever to the first party.

"The rice hereby agreed to be delivered to the first party is to be one-fifth in quality and quantity of the rice so grown; that is to say, every fifth sack of rice as it is taken from the separator and sacked shall be marked for the said first party and delivered to it as above set out. The one-fifth part of the rice so grown shall become the property of the said first party as soon as grown, threshed and sacked, and the said first party shall have the right to ownership in the same from such date."

"Any person, storage or milling company, is hereby instructed to give to first party any information it may call for relative to any rice purchased from or held for account of second party."

It is further alleged that said Canal Company furnished said water to irrigate the rice crop of Blair, as it had contracted to do, and that Blair had grown, harvested, and stored in the warehouse of said Warehouse Company 1,221 sacks of rice as he had agreed to do by the terms of said contract, which said rice was owned four-fifths by Blair and one-fifth by the Canal Company under the terms of said contract; that by the agreement of both Blair and the Canal Company the Warehouse Company sold said rice, and of the proceeds of such sale the Warehouse Company, after deducting storage charges and commission for making such sale, paid to Blair four-fifths thereof, and deposited the other one-fifth thereof, to wit, the $820.10 now in controversy, in bank to await a settlement of the dispute between Blair and the Canal Company; that the said Blair had no interest whatever in said $820.10, but that the same was the property of the Canal Company, for which it sues.

The Warehouse Company answered, admitting that W. L. Blair had stored 1,221 sacks of rice in its warehouse for storage and sale; that it had sold said rice by the consent of both Blair and the Canal Company for its full market value of $4,194.80; that after deducting its charges for storage and sale it had paid four-fifths of the remainder to W. L. Blair and the other one-fifth of such remainder was held by it until the court should determine to whom the same belonged.

The Warehouse Company further avers that it has been forced into this suit, in which it has no interest except as an innocent stakeholder, and prays for an attorney's fee of $100, and costs of court incurred by it. It also prayed to have Blair made a party defendant, so that all parties claiming an interest in the said $820.10 would be before the court, to the end that their rights might be litigated and determined.

W. L. Blair being made a party defendant to the suit, in his several answers admitted the execution of the contract as alleged by the Canal Company; admitted that he had grown, harvested, and stored in the warehouse of the Warehouse Company 1,221 sacks of rice; that said rice was grown upon said 240 acres of land watered, or partially watered, by the Canal Company. He further answered as follows:

"This defendant would further show to the court that by virtue of the failure and refusal of the plaintiff to comply with the terms of this said contract he declined to pay the one-fifth of the rice raised upon the said lands as water rent, covered by the terms of the said contract, and so notified said Colorado Canal Company by giving personal notice to its president, J. F. Holt, as well as to its general manager, Weston Mayfield, and further refused to deliver the one-fifth of the said rice crop as provided in the terms of said contract to any public warehouse in Bay City, Matagorda county, Tex., as the property of, or for the use and benefit of, the said plaintiff Colorado Canal Company, as under the contract provided and specified. But, on the contrary, this defendant stored each and every sack of rice raised by him upon the said land for the rice reason of 1912 with the Union Warehouse & Elevator Company at Bay City, Matagorda county, Tex., in his own name and to his own personal account, and informed the said Union Warehouse & Elevator Company at the time he placed the said rice therein that he refused to recognize any right, title, or interest in the said rice crop or the rices placed in the said warehouse in the Colorado Canal Company, and that the said Union Warehouse & Elevator Company received the said rice as the property of W. L. Blair, and that warehouse receipts were issued to him accordingly. But that thereafter said rices were sold, and the said Warehouse Company paid to this defendant four-fifths of the proceeds thereof, less warehouse charges and commissions, and retained one-fifth under the pretext of protection against loss on account of the pretended claim of the plaintiff the Colorado Canal Company to a one-fifth interest therein, to wit, $820.10.

"This defendant would further show to the court that, as hereinbefore stated, no segregation from the general crop of rice raised by him was ever made, and he has never at any time parted with the title thereto, but, on the contrary, says that he is entitled to retain the proceeds of said rice, to wit, $820.10, in compensation and partly to compensate this defendant for his loss by virtue of breach of contract on the part of the plaintiff, Colorado Canal Company."

He further averred that the Canal Company had failed to properly water his rice crop as it had contracted to do, and that by reason of such failure he had suffered damages in the sum of $2,569.90, and concluded with the following prayer:

"Wherefore this defendant prays that the plaintiff Colorado Canal Company take nothing by its suit against the Union Warehouse & Elevator Company, or as against this defendant, and that this defendant, W. L. Blair, recover of and from the plaintiff Colorado Canal Company the said sum of $820.10, together with all

costs in this behalf had and expended, for general relief, and for all such other and further relief to which he may be entitled, in law or in equity," etc.

The Canal Company, as a defense to Blair's cross-bill, denied all the allegations of Blair with reference thereto, and especially pleaded that if it had to any extent failed to furnish all water necessary to fully and sufficiently water Blair's rice crop, the same was, because of an unprecedented drouth, resulting in the drying up of the waters of the Colorado river from which its water supply for its canal was obtained, and that under such condition it was relieved from liability for damage occasioned by its failure to supply such water by the terms of its contract with Blair.

The trial court by proper decree allowed the Warehouse Company an attorney's fee of $82 out of the $820.10 in controversy which it held in its possession as stakeholder, and upon order of the court the balance of said sum, to wit, $738.10, was deposited by the Warehouse Company in the registry of the court, and thereupon the Warehouse Company was dismissed from the suit. No complaint being made on appeal of this order, we shall not further mention said Warehouse Company in this opinion.

A jury was selected and sworn to try the issues between the Canal Company and W. L. Blair. After plaintiff Canal Company had introduced its evidence and rested its case, appellant Blair filed the following motion:

"Now comes the defendant W. L. Blair, without waiving his right to offer his testimony, and moves the court to instruct the jury to find that the plaintiff take nothing in this cause of action, and that the defendant W. L. Blair recover from the plaintiff the $820.10, the subject-matter of this suit and now on deposit with this court, deposited by the defendant Union Warehouse & Elevator Company, for the following good and sufficient reasons, to wit:

"(1) This is not a suit by plaintiff for the recovery of an indebtedness against the defendant Blair or for the foreclosure of any contract or statutory lien against any rices or other property to secure the payment of such indebtedness due the plaintiff by defendant Blair, but, on the contrary, is a suit against the defendant Union Warehouse & Elevator Company for conversion of $820.10, the property of plaintiff, stating that said aforesaid mentioned sum was the amount of rent due by the defendant W. L. Blair to plaintiff as water rental for the year 1912, and alleging that said sum of money was and is the property of plaintiff.

"(2) Because the undisputed evidence in this case shows (and that being the evidence of the plaintiff) that the plaintiff had a contract with the defendant W. L. Blair to furnish water for the irrigation of a certain 240 acres of land, described in said contract of writing to be grown to rice during the year 1912, retaining by the terms of said contract a first mortgage lien in addition to the statutory lien to secure the payment of its rents, and said contract further providing that the defendant W. L. Blair was to pay to the plaintiff as water rental one-fifth of all the rice grown on said land, and further providing that said one-fifth was to be equal in quality and quantity of the rice so grown, that

is to say, every fifth sack of rice as it was taken from the separator and sacked should be marked for the said first party, and should be delivered to said first party at some public warehouse in Bay City, Tex., without cost to the plaintiff. The evidence further shows that there was no segregation of the one-fifth part of said crop so claimed by the plaintiff, nor was any part thereof ever marked or branded for the plaintiff, and the evidence further shows that the rices were placed in the warehouse of the Union Warhouse & Elevator Company to the account of the said W. L. Blair, and that the same there so remained until it was sold, and when said rices were sold by the Union Warehouse & Elevator Company, or this defendant, W. L. Blair, that the same were sold to the account of the said W. L. Blair, and the proceeds thereof paid to him, except the warehouse charges and commissions of sale, and the $820.10, the subject-matter of this suit, the same being one-fifth of the proceeds of the sale of the said rice, was held by the said defendant Warehouse Company for its own protection, declining to recognize the title in either the plaintiff, or the defendant W. L. Blair until their controversy could be adjusted.

"This defendant would further show to the court that he here now abandons his cross-action against the plaintiff, Colorado Canal Company, for damages, and only asks for the recovery of the $820.10 as hereinabove set out.

"Wherefore, this defendant W. L. Blair prays the court that the jury be instructed to find that the plaintiff take nothing by his cause of action, and that he do have and recover of and from the said plaintiff, Colorado Canal Company, the said sum of $820.10, together with all costs in this behalf had and expended, and in duty bound will thus ever pray."

The court permitted Blair to abandon his cross-action, and his plea setting up such damages was stricken out, but overruled his motion for an instructed verdict.

The court instructed a verdict in favor of the Canal Company against Blair for the said sum of $738.10 paid by the Warehouse Company into the registry of the court. The jury rendered a verdict in accordance with said instructions.

In the judgment rendered upon the verdict of the jury we find the following recitals:

"It is therefore considered by the court, so ordered, adjudged, and decreed, that so much of said motion of said defendant W. L. Blair, wherein he requests of the court an instruction to the jury that they find that plaintiff take nothing, and that he, the said defendant W. L. Blair, recover of the said plaintiff the said sum of $820.10, on deposit in the registry of this court, be, and the same is hereby overruled, to which action of the court the said defendant W. L. Blair then and there excepted, and thereon duly reserved his bill of exception.

"And thereupon the said defendant W. L. Blair, through his counsel, orally requested the court to permit him to file a trial amendment in this cause, which request the court granted, and then the said defendant W. L. Blair, on the 9th day of January, A. D. 1917, filed in said cause what is denominated his trial amendment, and the court, after having heard same read by said defendant, refused to permit same to be filed, and ordered same stricken from the cause upon the ground that said trial amendment averred upon the same cause of action as was contained in his answer, which he, the said defendant W. L. Blair had abandoned in open court, and which had been theretofore in the progress of the trial voluntarily withdrawn and

discontinued by the said defendant W. L. Blair, and to which action of the court the said defendant W. L. Blair, then and there excepted, and thereon duly preserved his bill of exception.

"And thereupon the said defendant W. L. Blair refused to amend his pleadings, and refused and declined to introduce any evidence in the cause, and the court thereupon instructed the jury to return a verdict for the plaintiff for the amount of money in the registry of the court, less the sum of $82 as attorney's fees allowed the defendant Union Warehouse & Elevator Company."

From this judgment W. L. Blair has appealed.

[1] By his first and second assignments it is, in substance, insisted that the trial court erred in finding that the Canal Company owned the money deposited in court and in peremptorily instructing the jury to return a verdict in favor of the Canal Company for said money. The contention of appellant, W. L. Blair, is that the undisputed evidence shows that the Canal Company had contracted with appellant to furnish water for the proper irrigation of his crop of rice; that for such service appellant agreed to pay the Canal Company one-fifth of the rice grown and harvested on the land so watered when the same was grown, harvested, and sacked, and when the Canal Company's one-fifth part thereof had been marked and segregated as the rice of said Canal Company; that the undisputed evidence further shows that no part of said rice was ever segregated, marked, and set aside to the Canal Company, but, upon the contrary, all of said rice was placed by appellant in the warehouse of the Warehouse Company as appellant's property. He further contends that as the Canal Company's one-fifth part of the rice had not been segregated, marked, and delivered to it, it owned no interest in the rice or the proceeds of a sale of the same for which it could sue, but that if the Canal Company had any claim growing out of the contract with appellant, it was an account or debt only due by appellant to it for water rent. There is no merit in this contention. The undisputed evidence shows that the contract between the Canal Company and appellant was, in effect, that appellant was to plant and cultivate the crop of rice in question; that the Canal Company was to furnish the water to irrigate the same, and that after said rice had matured, appellant was to harvest and sack the same; that one-fifth of the rice so harvested and sacked, equal in quality to the other four-fifths thereof, should be the absolute property of the Canal Company and the other four-fifths the property of appellant; and that appellant was to deliver the one-fifth part of the rice belonging to the Canal Company to some public warehouse in Bay City.

The undisputed evidence also shows that said rice crop was planted, cultivated, watered, harvested, and sacked as agreed upon by the parties, and that all the rice was delivered by appellant to the Union Warehouse & Elevator Company at Bay City, and that the same was placed in its warehouse, and that thereafter all the rice was sold by the Warehouse Company by the consent of both appellant and the Canal Company; that four-fifths of the proceeds of such sale was paid to appellant; and that the other one-fifth thereof was held by the Warehouse Company until paid into the registry of the court to abide the result of this suit. Under the terms of the contract between appellant and the Canal Company, the Canal Company was the owner of a specified undivided one-fifth part of the rice crop when the same was harvested, as distinguished from a lien. The two parties were joint owners of the rice, one owning one-fifth and the other four-fifths thereof. Texas Produce Exchange v. Sorrell, 168 S. W. 74; Sparks v. Ponder, 42 Tex. Civ. App. 431, 94 S. W. 428; Antone v. Miles, 47 Tex. Civ. App. 289, 105 S. W. 39.

[2] The sale of the whole of the rice having been made by the consent of both parties claiming an interest therein, and appellant having been paid his four-fifths of the proceeds of such sale, the other one-fifth thereof passed into the registry of the court was the property of the Canal Company, in which appellant had no interest, and the trial court properly so adjudged.

What we have already said sufficiently disposes of the third assignment. It is therefore overruled.

[3] The fourth assignment is as follows: "The court erred in peremptorily instructing the jury in verbal charge over the objection of the defendant W. L. Blair, demanding that the court prepare a written charge of the jury in order that he might prepare and save his exceptions to the charge of the court."

We have reached the conclusion that under the pleadings and evidence the trial court could have rendered no other judgment than the one which it did render; hence the verbal peremptory instruction for appellee, if error, was harmless error for which we will not reverse the judgment rendered.

Another reason for holding the verbal charge harmless is that we have considered all the complaints of appellant as fully as we could have done had the peremptory charge been in writing, and therefore no injury is shown to have been suffered by reason of the verbal charge complained of.

We find no error in the judgment of the trial court, and the same is therefore affirmed.

Affirmed.